**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4849

ERIC ANTHONY WILLIAMS,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-97-102-DKC)

Submitted: April 28, 1998

Decided: May 27, 1998

Before MURNAGHAN and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James K. Bredar, Federal Public Defender, Michael T. CitaraManis,
Assistant Federal Public Defender, Greenbelt, Maryland, for Appel-
lant. Lynne A. Battaglia, United States Attorney, Stuart A. Berman,
Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Eric Anthony Williams ("Williams") appeals his conviction pursuant to his guilty plea for possession of a firearm by a convicted felon in violation of 18 U.S.C.A. § 922(g)(1) (West Supp. 1998). Williams contends that the firearm that is the basis for the conviction was obtained during an illegal arrest, and as a result the seizure of the firearm violated the Fourth Amendment. Williams alleges that the court erred in not applying the Fourth Amendment's exclusionary rule and in denying his motion to suppress the firearm. Because we find no error in the district court's decision, we affirm Williams's conviction.

I.

On February 6, 1997, Officer Bruce Howard ("Howard") of the Prince George's County, Maryland, Police Department stopped the car Williams was driving for speeding.[1]  Williams admits the violation and concedes that the stop was therefore justified. [2] After stopping the car, Howard obtained Williams's driver's license and registration and radioed the Prince George's County Sheriff's Office to check for any outstanding warrants against Williams. The Sheriff's Office is separate from the police department and does not normally conduct criminal investigations.[3]

The dispatcher at the Sheriff's Office ran two computer checks for outstanding warrants: one through the Sheriff's Office computer system and one through the Maryland Interstate Law Enforcement System ("MILES"). The warrant check with MILES showed no

_____

[1] J.A. at 40. Williams was traveling sixty miles per hour in a thirty mile per hour zone.
[2] Appellant's Br. at 7.
[3] Md. Ann. Code, Courts & Judicial Proceedings Article, § 2-309(r).

outstanding warrants against Williams. However, the Sheriff's Office computer revealed an outstanding warrant from Frederick County, Maryland, for violation of probation. The dispatcher reported this outstanding warrant to Howard, and based on this information, the officer asked Williams to step out of his car and enter his patrol car. At trial the officer stated that his reasons for doing so were: (1) to have Williams sign the citation for speeding; and (2) to arrest Williams on the outstanding warrant.**4**

Williams exited his car and, by his own admission, left the driver's door open.**5** After Williams signed the citation, Howard placed him under arrest based upon the warrant. Howard then handcuffed Williams, "patted him down,"**6** and placed him in the patrol car. Upon being informed that he was under arrest on the outstanding warrant, Williams claimed that the warrant had been served and that the dispatcher's report must have been a mistake. As a result of this claim, Howard again radioed the Sheriff's Office to verify the existence of the outstanding warrant.

While waiting for a response from the Sheriff's Office, Howard noticed that the driver's door of Williams's car was open and that the door was protruding onto Kirby Road, presenting what Howard believed was a "traffic hazard."**7** Leaving Williams in the patrol car, Howard approached Williams's car to close the door. When he reached the open door, Howard noticed the handle of a handgun protruding from beneath the driver's seat of the car. Howard removed the handgun, which was later identified as a Sturm Ruger model P-89 nine millimeter, unloaded it, and returned to the patrol car. Shortly thereafter, Howard was informed that the report of an outstanding warrant was erroneous because it had been served in August 1996. However, at this point, Howard, who was aware of Williams's criminal record, arrested Williams based on his possession of the handgun. On June 16, 1997, after an evidentiary hearing, the district court denied Williams's motion to suppress the handgun. Williams then

_____

**4** J.A. at 58.
**5** Appellant's Br. at 3.
**6** J.A. at 47.
**7** **Id.** at 42.

pled guilty to violating 18 U.S.C. § 922(g)(1), but preserved his right to appeal the admission of the handgun. The district court sentenced Williams to sixty-three months' imprisonment and three years' supervised release. This appeal followed.

II.

Williams contends that the district court erred in admitting the handgun into evidence. With regard to the decision to admit the handgun, we review the district court's legal conclusions de novo and its findings of fact for clear error.[8]

The Fourth Amendment exclusionary rule has historically been used to deter police misconduct rather than to punish the errors of judges and magistrates.[9] In United States v. Leon,[10] the Court considered a situation in which large quantities of drugs and other evidence were seized in a search pursuant to a warrant that later proved to be invalid. The parties against whom the evidence was to be introduced sought to have it excluded on the ground of the warrant's invalidity. The Court, however, disagreed, and focused instead on an officer's right to rely, in good faith, on a facially valid warrant.[11]

In Arizona v. Evans,[12] this "good faith exception" was extended to situations where officers rely on a faulty police record that was prepared by court personnel. The Court stated that "court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime . . . they have no stake in the outcome of particular criminal prosecutions."[13] The Evans Court, however, limited itself to addressing the situation in which these disinterested, non-law enforcement employees are at fault.[14] The court did not address whether the good faith exception would apply in a

_____

**8 See Ornelas v. United States** , 517 U.S. 690 (1996).
**9 Arizona v. Evans**, 514 U.S. 1, 14 (1995).
**10** 468 U.S. 897 (1984).
**11 See Leon**, 468 U.S. at 922-25.
**12** 514 U.S. 1 (1995).
**13 Id.** at 15 (citations omitted).
**14 See id.** at 16-18 (O'Connor, J., concurring).

case where the erroneous information was prepared by law enforcement personnel.**15**

In the instant case, Williams argues that this court must consider a situation in which the type of error that occurred in Evans was made not by court employees, but by employees of a sheriff's office. Williams contends that errors by law enforcement employees are not covered by Evans's extension of the good faith exception, and, therefore, the exclusionary rule should bar the admission of the handgun in question.

Although Williams correctly notes that the Evans Court did not specifically extend the good faith exception to searches that are made as a result of an error by law enforcement employees, we are satisfied that the error in this case is of the type that is clearly contemplated by the good faith exception as explained by both Leon and Evans. Evans emphasizes Leon's directive to apply the exclusionary rule only when it "could be expected to alter the behavior of the law enforcement officers [in question],"**16** and states that:

> Where the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way . . . [e]xcluding the evidence [in such situations] can in no way affect [an officer's] future conduct unless it is to make him less willing to do his duty."**17**

In this case, we believe these two factors--objective reasonableness on Howard's part and a lack of deterrent effect if the exclusionary rule were to be invoked--are obvious.

As to reasonableness, Williams concedes that the initial stop by Howard was justified, and we can see nothing remotely unreasonable in Howard's conduct from that point forward. After he became aware

_____

**15** <u>Id.</u> at 16 n.5.
**16** <u>Id.</u> at 11.
**17** <u>Id.</u> at 11-12 (quoting <u>Leon</u>, 468 U.S. at 919-20 (internal citations omitted)).

that there was an outstanding warrant against Williams, Howard had Williams leave his own car and enter the patrol car, which he would have done in any case simply to get Williams to sign the citation for speeding. Williams argues that he could not have closed the door himself because he was arrested and handcuffed. Even so, this still does not make the officer's act of closing the door to prevent a traffic problem unreasonable. Based on the information the officer received, he reasonably believed that Williams needed to be detained but was also willing, based on what Williams told him, to double check with the Sheriff's dispatcher to ensure that there was indeed an outstanding warrant. However, by the time he was able to determine that the original report of the warrant had been in error, Howard had observed the handgun in plain view while closing the door of Williams's car.

Applying the exclusionary rule to the handgun in this case would serve no other purpose than, as the court stated in <u>Leon</u>, "`to make [an officer] less willing to do his duty.'"[18] As was demonstrated at the suppression hearing in the district court, the error that led to the failure to remove the warrant from the Prince George's County Sheriff's Office computer was made by the Frederick County, Maryland Sheriff's Office, which failed to notify Prince George's County that the warrant had been served.[19] Thus, not only the law enforcement officer in question (Howard), but also the law enforcement office in question (the Prince George's County Sheriff's Office), had no choice but to rely on the information regarding the warrant they received. To use the exclusionary rule to prompt them to do otherwise would be to create a situation in which officers could not do their duty without fear of censure.

Williams asks us to stretch the exclusionary rule in two ways. First, he asks us to include within its scope errors made not by the law enforcement agency that conducted the search in question (here, the Prince George's County Sheriff's Office), but by a separate agency (the Frederick County Sheriff's Office). Second, Williams also attempts to include mistakes made by clerical employees, which are closer in function to the court employees described in <u>Evans</u>, under

_____

**18** <u>**Leon**</u>, 468 U.S. at 920 (quoting <u>Stone v. Powell</u>, 428 U.S. 465, 539-40 (1976) (White, J., dissenting)).
**19** J.A. at 72.

6

the heading of mistakes by "law enforcement." We believe such an interpretation of the exclusionary rule is unwarranted and therefore decline to apply the rule in this case.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

7