# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3436

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri |
| David Alan Clemens, | * | |
| | • | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted:  March 17, 2000

Filed:   August 21, 2000

_____

Before WOLLMAN, Chief Judge, and McMILLIAN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

McMILLIAN, Circuit Judge.


David Alan Clemens appeals from a final judgment entered in the United States
District Court[1] for the Western District of Missouri finding him guilty, pursuant to a
conditional guilty plea, of conspiracy to manufacture methamphetamine, in violation of
21 U.S.C. § 846.  See United States v. Clemens, No. 3:98CR05020-001 (W.D. Mo.

_____

[1] The Honorable Gary A. Fenner, United States District Judge for the Western
District of Missouri.

Sept. 17, 1999).  For reversal, Clemens argues that the district court erred in denying his motion to suppress evidence obtained as a result of an unlawful search of his home. For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

On March 26, 1998, at 7:30 a.m., deputies with the Newton County (Missouri) Sheriff's Department executed a search warrant to search the residence at 3763 Apricot Drive in Newton County.  Inside the house, the deputies found Clemens along with a functional methamphetamine laboratory, 57.07 grams of substances containing methamphetamine, 110.63 grams of pseudoephedrine, as well as various other precursor chemicals, production equipment, and multiple firearms.  A fingerprint taken off one piece of equipment matched that of Clemens.  See id. at 2 (Apr. 16, 1999) (plea agreement).

On October 8, 1998, Clemens was charged in a two-count indictment with conspiring to manufacture methamphetamine and attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846.  The indictment was superseded on February 24, 1999, to add a third count charging Clemens with use of a firearm during the production of methamphetamine, in violation of 18 U.S.C. § 924(c). Clemens filed a motion to suppress evidence seized from his residence during the execution of a search warrant.  The government opposed Clemens's motion to suppress, and the matter

2

was referred to a magistrate judge[2] for a recommended disposition. The magistrate judge did not hold an evidentiary hearing on the suppression motion. After reviewing the search warrant, the warrant application, five affidavits submitted in support of the warrant application, and the parties' filings on the motion to suppress, the magistrate judge issued a report and recommendation. See id. (Jan. 22, 1999) (report and recommendation) (hereinafter "slip op.").

The following statement of facts is based on the magistrate judge's report and recommendation, see id. at 2-4, and the record on appeal. On March 23, 1998, Don Kittrell, the manager of a Joplin, Missouri, hardware store, observed two individuals purchase a number of items commonly used in the production of methamphetamine, including masking tape, washer hoses, sulfuric acid, muriatic acid, and plumbing equipment. See Brief for Appellee, Addendum at 4 (Kittrell affidavit); id. at 10-11 (transaction receipt). Kittrell notified the local police, provided them with a list of the items purchased, described the two white males in detail, and later observed them leave the hardware store's parking lot in an early 1980's black Trans Am car. See id. According to Officers Chad Allison and Chuck Niess, they were dispatched to the store, where they witnessed two men matching Kittrell's description get into a black Pontiac / Trans Am with Kansas tags "MAB-504" and drive out of the parking lot. See id. at 8 (Niess affidavit); id. at 9 (Allison affidavit). According to Officer David Newell, he arrived at the hardware store in an undercover car to observe the two subjects place a cartful of items into a black Pontiac Firebird / Trans Am with Kansas tags "MAB-504" and drive away. See id. at 5 (Newell affidavit). Newell followed the car to 2700 Joplin, at which point Officer Frank Lundlen took over the tailing of the vehicle. See id. According to Lundlen, he observed the vehicle eventually stop at a residence at 3763 Apricot Drive. The two subjects exited the car and approached the residence. Lundlen noticed several other vehicles in the driveway, including a large

_____

[2] The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

3

full-size blue Blazer, a red Ford Ranger pickup, and a 1990's black Buick Regal. Lundlen watched the residence for some time, observed no one else coming or going from the house or the vehicles, and provided Newell with a description of said vehicles. See id. at 3 (Lundlen affidavit); id. at 6 (Newell affidavit). Newell then contacted the Newton County sheriff's office, which could not identify who lived at the residence. See id. at 6 (Newell affidavit).

According to Newell, he was contacted the following morning by Cherokee County (Kansas) Deputy Ernie Donaldson, who had previously been contacted by Officer Allison. Donaldson informed Newell that the blue Blazer belonged to David Clemens, "a known meth cook to [Donaldson]," that the red Ranger belonged to Donna Shelton, "another meth cook," and that the 1986 Pontiac belonged to Tonya Laturner, "known to [Donaldson] to be affiliated with the production of methamphetamine." Id. at 7 (Newell affidavit). Newell further related:

> Ernie Donaldson stated that [the persons associated with] the above vehicles [the Blazer and the Ranger] cooked at the river, in Riverton, Kansas, but have not been around in the last week. Ernie stated it appeared that they were cooking at a new location, and with this information, he believed they were cooking at Apricot Drive.

Id.

On March 25, 1998, an application for a warrant to search the residence at 3763 Apricot Drive was submitted to a Missouri state court judge. The warrant application included the supporting affidavits of Kittrell as well as the four police officers. See id. at 2 (warrant application). Based on the application, the state court judge issued a search warrant that same day, authorizing the police to search the residence at 3763 Apricot Drive for "muriatic acid, Coleman fuel, paint thinner, acetone, hydrogen gas, red phosphorous, iodine crystals, ephedrine, all ingredients known to be used in the manufacture of methamphetamine, methamphetamine, marijuana, any paperwork

4

relating to drug related activities, [and] U.S. currency." See id. at 1 (search warrant).

Based upon these facts, the magistrate judge made the legal determination that there was a substantial basis for a finding of probable cause and thus for issuance of a valid search warrant. See slip op. at 5. The magistrate judge relied on the "independent, first-hand observation of the store manager, a neutral, private citizen, regarding possible criminal activity" and noted Kittrell's full description of the suspects and their vehicle, observations which were later confirmed by Officers Niess and Allison. Id. The magistrate judge also recognized that, although Kittrell did not specifically state in his affidavit that the items purchased were "commonly used in the production of methamphetamine," a cursory inspection of the transaction receipt confirmed that the items referenced by Kittrell were in fact commonly associated with methamphetamine laboratories. Id. The magistrate judge further relied on the independent police work, which "link[ed] the location where the suspect vehicle was parked with other vehicles belonging to persons suspected of being involved in methamphetamine production." Id. at 6. The magistrate judge reasoned that, although the affidavits did not provide the specific basis for Officer Donaldson's knowledge of Clemens's alleged drug production activities, Clemens's criminal activity was described "with sufficient detail that it could be inferred that [Donaldson's] basis of knowledge was from first-hand experience or observation." Id.

The district court adopted the magistrate judge's report and recommendation and denied Clemens's motion to suppress. See id. (Feb. 11, 1999) (memorandum and order). Clemens entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. The district court sentenced Clemens to 96 months of imprisonment, four years supervised release, and a special assessment of $100.00. See id. (Sept. 17, 1999) (judgment). This appeal followed.

## Discussion

The sole issue on appeal is whether the district court erred in denying Clemens's motion to suppress evidence obtained pursuant to the search of his Apricot Drive residence. Clemens argues that the search warrant for his residence was not supported by probable cause and that the good faith exception to the exclusionary rule is inapplicable because the magistrate judge was misled by certain misstatements and omissions of material fact by the affiant officers.

As a general matter, our role in reviewing a district court's denial of a motion to suppress evidence on Fourth Amendment grounds is "to ensure that the evidence as a whole provides a substantial basis for finding probable cause for the issuance of the warrant." United States v. Buchanan, 167 F.3d 1207, 1209 (8th Cir. 1999) (citing Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam)). Along those lines, we review determinations of probable cause *de novo*, though we must "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996). However, in certain circumstances, it is permissible to turn immediately to consideration of the officers' good faith reliance on a search warrant. See United States v. Leon, 468 U.S. 897, 925 (1984) (Leon).

In this case, even assuming for the sake of argument that the search warrant was not supported by probable cause, we believe that the good faith exception to the exclusionary rule applies. In Leon, the Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause and technical sufficiency. See id. at 922. However, suppression remains an appropriate remedy if: (1) the judge issuing the warrant "was misled by information in an affidavit that the

6

affiant knew was false or would have known was false except for his [or her] reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was "so facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." Id. at 923 (citations omitted).

Clemens claims that the first exception applies. He argues that the affiant officers misled the issuing judge by making misstatements and omissions of material fact with respect to the existence of probable cause. Clemens notes that, although the hardware store manager never referenced certain items related to methamphetamine production (such as Coleman fuel, paint thinner, acetone, hydrogen gas, red phosphorous, iodine crystals, and ephedrine), these items were nevertheless included in the warrant application. Clemens argues that the affiant officers' vague references to the purchase of "items associated with meth[amphetamine] production," see, e.g., Brief for Appellee, Addendum at 3 (Lundlen affidavit), as well as the failure of the affiants to inform the issuing judge "that they knew the items sought in the search warrant had not been purchased and that in fact, they had no information to form a belief that the items would be at the residence to be searched," effectively misled the issuing judge in his assessment of the warrant application. Brief for Appellant at 10. We disagree.

There is no evidence in the record that any affiant made misrepresentations or statements to the issuing judge in reckless disregard for the truth. Kittrell referred to the transaction receipt for a comprehensive list of those items purchased by the suspects at the hardware store; the receipt itself clearly stated which items from the warrant application had in fact been purchased. See Brief for Appellee, Addendum at 4 (Kittrell affidavit); id. at 10-11 (transaction receipt). The affiant officers' shorthand references to the items bought as "associated with methamphetamine production" are neither misstatements nor omissions of material fact, but rather stand as accurate

(though broad) descriptions of the referenced products. The application's statement that various methamphetamine precursors would likely be found at the Apricot Drive residence reflects an expectation that such items would logically be located there as well, given the purchase of certain methamphetamine-related items and the buyers' arrival at a site where several persons suspected of producing methamphetamine were apparently located. Although we do not address the validity of this expectation or whether these facts provide a substantial basis for the existence of probable cause, we can state that the affiants made no statements that could be considered either "false" or "in reckless disregard for the truth."

Moreover, there is no evidence to suggest that any of the other three exceptions to the <u>Leon</u> good faith exception would apply to the search of Clemens's residence. Accordingly, even if a Fourth Amendment violation occurred, the <u>Leon</u> good faith exception applies to prevent the exclusion of evidence obtained through the execution of the search warrant at Clemens's residence.

**Conclusion**

For the reasons we have stated, the order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

8