110 F.3d 65
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Detrich BLACKWELL, Defendant-Appellant.
 No. 96-5142.
 United States Court of Appeals, Sixth Circuit.
 April 3, 1997.
 
 Before: KENNEDY, NELSON, and VAN GRAAFEILAND,* Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Detrich Blackwell, entered a conditional plea of guilty to charges of transporting a handgun in violation of 21 U.S.C. § 924(a)(1) and possessing crack cocaine in violation of 21 U.S.C. § 844. On appeal of his conviction, Mr. Blackwell contends that the district court erred in denying a motion to suppress evidence allegedly seized in violation of his Fourth Amendment rights. Finding no reversible error, we shall affirm the conviction.
 
 
 2
 * On the afternoon of May 19, 1995, Kentucky State Trooper Michael Martin saw Mr. Blackwell driving--somewhat erratically, in the trooper's opinion--a 1980 Cadillac automobile that had no license plate. Trooper Martin pulled the vehicle over and activated a video camera with which his cruiser was equipped.
 
 
 3
 Approaching the Cadillac on foot, the trooper noticed that it had a temporary license tag. The tag was lying flat on the ledge next to a tinted rear window.
 
 
 4
 In response to a request for his driver's license, Mr. Blackwell produced a Tennessee license application in the name of Christopher Turner. Blackwell had no other identification and could not produce the registration for the vehicle. The trooper suggested looking for the registration in the glove compartment. When Mr. Blackwell started to do so, the glove box slid out loose--suggesting to the trooper that the dashboard might have been fitted with a hidden compartment to facilitate illicit drug transportation.
 
 
 5
 Questioned about where he was going, Mr. Blackwell said that he was en route from Clarksville, Tennessee, to Murray, Kentucky. If so, Blackwell had gone far out of his way.
 
 
 6
 The trooper ran a registration check, using the Cadillac's vehicle identification number, and ascertained that the car was registered to a Juanita Wells. When asked the name of the owner Mr. Blackwell answered "Juanita," but expressed uncertainty as to Juanita's last name. He suggested that it might be McClendon.
 
 
 7
 After another officer had arrived on the scene, Trooper Martin returned the driver's license application to Mr. Blackwell and said that he was giving him a "courtesy notice" only. Martin then asked if there were any weapons or drugs in the car. Mr. Blackwell replied in the negative, whereupon Trooper Martin asked "Do you have a problem with us looking through your car?" The government contends (and the district court found) that Mr. Blackwell consented to a search. Mr. Blackwell vigorously denies having done so.
 
 
 8
 A search was conducted, and it produced a 9mm. handgun from under the driver's seat and three baggies of crack cocaine from a bag in the back seat. Following his indictment, Mr. Blackwell moved to suppress this evidence. The district court denied the motion after conducting an evidentiary hearing. A plea agreement was then negotiated under which Mr. Blackwell was allowed to enter a conditional plea pursuant to Rule 11(e)(1)(B), Fed.R.Crim.P. Mr. Blackwell reserved the right to change his plea should it be held on appeal that the denial of his motion to suppress was erroneous.
 
 II
 
 9
 * Mr. Blackwell contends that an unreasonable seizure occurred when Trooper Martin "continued to detain him without an objectively reasonable suspicion of criminal activity after issuing the courtesy notice." The government argues that Mr. Blackwell waived this issue by failing to raise it before the district court. Whether the issue was properly raised is a close question, and one we need not decide--for the merits cannot be resolved in Mr. Blackwell's favor in any event.
 
 
 10
 We are satisfied that the trooper had an objectively reasonable suspicion of criminal activity. Trooper Martin's training reasonably suggested to him that the unattached glove box was a sign of illegal drugs being concealed in the dash. Mr. Blackwell admittedly did not own the vehicle and was somewhat vague about who did. He had no registration papers and no proper driver's license. And his story as to where he had come from and where he was going did not ring true, since he was nowhere near the usual route from Clarksville to Murray.
 
 
 11
 Like probable cause, reasonable suspicion is a "commonsense, nontechnical conception[ ]," which "deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 116 S.Ct. 1657, 1661 (1996) (internal quotation marks omitted). If Mr. Blackwell was being "detained" during the very brief interval while the trooper asked about weapons and drugs and requested permission to search the car, it seems to us that there were factual and practical considerations that made the detention reasonable.
 
 B
 
 12
 Mr. Blackwell denies having consented to the search of the car. After viewing the videotape of the incident, the district court found that he did consent. We cannot say that this finding was clearly erroneous.
 
 What the videotape shows is this:
 
 13
 "Trooper Martin: ... Well, do you have a problem with us looking through your car? [Defendant gestures that he does not have a problem.] You have nothing in there to hide? You don't care, do you?
 
 
 14
 Mr. Blackwell: I mean, it's not my car. [Again, shrugging his shoulders as if to say 'Who cares?']
 
 
 15
 Trooper Martin: Okay, so you don't have a problem with us looking through it then, right? [Defendant clearly shakes his head in the negative.] Okay. If you don't care, just come right back here and stand right by my car--so we can look through it there. [Defendant turns and walks directly toward the police car.]"
 
 
 16
 Mr. Blackwell was asked three times if the officers could search the car, and at least once gave a nod that indicated he had no objection to the search. Moreover, he walked back to the police car when Trooper Martin said, "If you don't care, just come right back here and stand right by my car." The district court did not err in finding unequivocal consent.
 
 
 17
 It is true that Mr. Blackwell was never advised that he was free to withhold his consent. But the Fourth Amendment does not require that a lawfully seized defendant be advised that he is "free to go" before his consent to search will be recognized as voluntary. Ohio v. Robinette, 117 S.Ct. 417 (1996). And "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Under the totality of the circumstances presented here, the failure to tell Mr. Blackwell that he could refuse consent is not controlling.
 
 
 18
 Mr. Blackwell was a 19-year old truck driver, by his account. He was not a child, he seemed to have no cognitive deficiency, and, as the district court noted, there is nothing to show that he was threatened, coerced, or treated harshly in any way. By the time consent was given, the officer had already made it clear that Mr. Blackwell would not be cited for failing to display a license tag. The district court's finding on the voluntariness of the consent was not clearly erroneous.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland, United States Circuit Judge for the Second Circuit, sitting by designation