OPINION
The State of Ohio appeals from an order of the Common Pleas Court of Montgomery County granting a motion by David M. Morris, defendant-appellee, to suppress evidence. The State presents the following sole assignment of error:
 THE TRIAL COURT ERRED WHEN IT SUPPRESSED DRUGS IN PLAIN VIEW AND SEIZED AS A DIRECT RESULT OF LEGAL POLICE CONDUCT.
The sole witness at the motion hearing was Officer Greg Stose of the Huber Heights Police Force. He testified that on the night of September 17, 2000, he was patrolling motel parking lots because of a recent rash of car thefts, abandoned and stolen vehicles, prostitution, and drug activity in such areas. Such patrolling had been specifically requested by Travel Lodge Motel where, at approximately 2:46 a.m., Officer Stose observed six people in the Travel Lodge lot. (Tr. 4, 6). He explained that if he finds people in such a lot at that hour, he will usually stop and talk to them unless they appear to be late arriving guests. He observed and approached the six people he saw at that time in the lot. Five of the people walked to a semitrailer and another vehicle in the lot, and the sixth, defendant Morris, walked away in another direction.
Officer Stose then called to Morris several times to "come back over and speak with [him]." (Tr. 8). Morris first ignored the call by Officer Stose, but eventually stopped and walked back to the officer, who asked for Morris' identification. Morris said it was in the car that two other people already occupied and, rather than letting Morris enter the car, he asked the people inside to hand out the I.D.
While waiting for the I.D., he heard something drop on the parking lot and identified it as a package of cocaine, commonly called a "bindle." Officer Stose detained Morris to determine his identity and explain that while he was not under arrest, if the package confirmed his suspicion that it was cocaine, a warrant would be issued for Morris' arrest. After confirming Morris' identity, the officer released him. At the conclusion of the hearing, the court stated its rationale in granting the motion to suppress as follows:
 I'm going to rule from the bench. Let me just review my notes.
 The Court will adopt the testimony of Officer Stose. Part of the Court's finding of the facts is the partial contents of the police report elicited through cross — and direct examination — cross — and redirect examination. I think the issue in the case is whether — I'm glad the officer is here so we can — I can give you my rationale for my decision — is whether or not — what encounter you had with Mr. Morris was consensual or whether it required the reasonable, articulable suspicion required by Terry, State of Ohio versus Terry — Terry versus Ohio.
* * *
 The defense attorney is saying it was a Terry stop. You needed to have reasonable, articulable suspicion that there was criminal activity cooking, somebody was up to no good, and you had better than a hunch, you had something that you could articulate that there's something going down here, a criminal activity going on.
 The prosecutor's arguing that it was consensual, you didn't command him to do anything, you asked him three or four times, and he came back to you voluntarily on his own.
 Or, in the alternative, Miss Howland's arguing there was reasonable, articulable suspicion. She's arguing both of those points.
 So we've got this gray area. And this happens a lot. And the Court cannot clearly see really which this is. But I'm going to find that it was a Terry stop and that you didn't have really enough to command him to do anything.
 Part of the evidence here is, the Court's going to find factually, that it was more than a request. "Hey, can you come here a minute?" The Court's going to find factually that even though you may not have said, "Get back here" or something that was a direct order, the fact that you said it three to six times, louder each time, and the defendant still hadn't complied, the Court is going to find that to be a directive because it kept repeating. And that's why I wanted you to tell me when I asked you the question, you know, "What was it? Were you commanding or were you asking?" I'm going to find that you were commanding because of the number of times that it happened. You were 60 to 80 feet away. You had to be yelling pretty loud. And each time you yelled, it was louder because you were getting frustrated that he wasn't complying. And so I'm going to find that was a show of authority and that — the alternative argued by the State — there wasn't reasonable, articulable suspicion.
 What you have is police background and experience. You have owners of the hotels or their management concerned about activity going on in the lot. But that's — you've got a late-night activity here. But that's not enough for you to reasonably have stronger than a hunch idea here there was criminal activity going on. You thought they were up to no good. But it takes a little more than that.
 So for that reason, the Court's going to find that you weren't able to articulate the Terry requirements of reasonable suspicion. I find that it wasn't a consensual encounter. It's a gray area, but the Court is going to find that it was not consensual, that your spoken words to him some three to six times from 60 feet away were really a directive.
 You testified that he could have kept walking away. But I'm wondering if he would have kept walking away what would have happened. You said that he would have just been able to walk away. But I doubt that. I think you would have gone after him if he had — after six spoken occasions to him to come back, that you probably would have gone after him.
On appeal, we review the finding of the trial court in its decision de novo. Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657. Here, we agree with the trial court.
In United States v. Mendenhall (1980), 446 U.S. 544, 554, the Supreme Court lists some circumstances which might indicate a seizure: "A threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officers' request might be compelled." (Emphasis added). The situation here is very similar to the situation in State v. Goss (May 28, 1999), Miami App. No. 98 CA 43, unreported, where this court held that commands by the police to Goss who was on the telephone to hang the phone up, stated repeatedly, until Goss complied, amounted to a Fourth Amendment seizure. This case is further similar to the situation in State v. Phelps (July 31, 1998), Montgomery App. No. 17064, unreported. This court there held that a seizure occurred when a policeman jogged after the defendant with his flashlight and ordered the defendant to stop.
We further agree with the trial court's finding that Officer Stose did not have reasonable, articulable suspicion that Morris was engaging in criminal activity when he ordered Morris to come back. We adopt the court's opinion on that issue, set forth above, and approve it as our own.
The assignment of error is overruled. The judgment is affirmed, and the case is remanded for further proceedings.
 ______________________ FREDERICK N. YOUNG, J.
FAIN, J., concurs.