NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4741
_____

UNITED STATES OF AMERICA

v.

KARL BRUCE EDWARDS,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cr-00735-001)
District Judge:  Hon. C. Darnell Jones, II

_____

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2014

Before:   RENDELL, JORDAN, and NYGAARD, *Circuit Judges*.

(Filed: November 19, 2014 )
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Karl Bruce Edwards challenges his conviction for bank robbery. He specifically contends that the United States District Court for the Eastern District of Pennsylvania erred in denying his motion to suppress evidence. We will affirm.

## I.    Background

On August 5, 2011, a man robbed a branch of the Wells Fargo bank in Phoenixville, Pennsylvania. He approached the bank teller, Laura Hilliard, and, saying "I want this," handed her a note that read "money, no dye packs." (App. at 173.) He told her, "[d]on't do anything stupid, I won't do anything stupid." (*Id.*) Hilliard gave the man all of the money in her drawer, which totaled approximately $10,750. He put the money in a white plastic bag and left the bank.

Officers Jason Komorowski and David Wakeley arrived at the bank a few minutes later, and Corporal Patrick Mark shortly after that. As Corporal Mark interviewed Hilliard, she described the robber as a black male in his late thirties or early forties, approximately 5′8″ tall, wearing sunglasses and a baggy white tee shirt, with short black hair and a "stubbly" beard and mustache, and carrying a white plastic bag. Though they began looking immediately, the officers were unable to find anyone matching that description in the vicinity of the bank.

An hour later, while police officers were still at the bank, Hilliard went outside to smoke a cigarette. While outside, she saw a man that she believed to be the bank robber riding a bicycle near the bank. Hilliard informed Corporal Mark, who immediately left the bank and began searching for the man on the bicycle. Corporal Mark did not find the

2

bicyclist, but he encountered a firefighter who informed him that Henry Hampton had just gone down the street on a bicycle. Corporal Mark immediately directed officers in the area to proceed to Hampton's home at 8 Hall Street, which was approximately two blocks from the bank, to secure the house, and to detain Hampton and all other occupants of the house.

Officer Komorowski was the first to arrive at 8 Hall Street, and he reported that there was a bicycle in front of the house. Corporal Todd Artz then arrived on the scene and was waiting outside the house with Officer Komorowski when Hampton, without prompting from the police, came out of the front door. Corporal Artz promptly handcuffed Hampton and had him sit in front of the house. Hampton, a black man, was dressed in a white tee shirt and had a "stubbly" beard and mustache.

When asked if anyone else was in the house, Hampton responded that there were two people inside. In the meantime, Officer Sean Knapp had arrived. Corporal Artz asked Officers Komorowski and Knapp to remove the occupants and conduct a security sweep of the house. After checking the first and second floors of the house and finding no one, the officers called into the basement for any occupant to come upstairs. A woman – Tanisha Ford-Bey – emerged immediately but the officers had to call several times before a second person – a black man with facial hair – emerged. It was the Appellant, Edwards, and he was shirtless when he came upstairs and exited the house. He and Ford-Bey were instructed to sit out front as well.

Corporal Mark then retrieved Hilliard from the bank and drove her to 8 Hall Street to determine if she could identify the bank robber. Sitting in an unmarked police car with

3

tinted windows about six to eight feet from where Hampton, Edwards, and Ford-Bey were sitting, Hilliard told Corporal Mark that she was "95 percent sure" that Hampton was the bank robber. Corporal Mark took Hilliard back to the bank, retrieved surveillance photos, and returned to 8 Hall Street. After consulting the surveillance photos, Corporal Mark and Officer Knapp concluded that Edwards – not Hampton – was the man in the surveillance photos. Corporal Artz reviewed the photos and agreed that Edwards was the man shown robbing the bank. Edwards was then arrested and Hampton was released. The District Court found that Edwards had been detained for approximately 30 minutes before his arrest.

During processing at the police station, officers recovered suspected marijuana and cocaine in Edwards's socks. And after Edwards identified himself as "Steven Edwards," the processing officers found a pay stub in his pocket made out to "Karl B. Edwards."

Back at 8 Hall Street, the officers performed a consent search of the basement.[1] They found a white plastic bag containing a pair of sunglasses, a hat, and a folded white

---

[1] After Edwards was arrested, Tyrone Hampton, the brother of Henry Hampton, gave the officers permission to search the house. Tyrone testified at the suppression hearing that his grandparents, who are deceased, owned the property at 8 Hall Street and that he lived there along with his three brothers. In his suppression motion, Edwards argued that the officers "did not obtain valid consent to enter the Hamptons' residence … because the consent provided by Tyrone Hampton was the direct result of Karl Edwards' illegal arrest, and it was given involuntarily." (App. at 56.) The District Court concluded that Edwards lacked standing to challenge the search at 8 Hall Street, reasoning that he had failed to prove that he had any reasonable expectation of privacy in the residence because he did not live there, nor was he an overnight guest. Edwards does not challenge that conclusion on appeal.

4

tee shirt.  They also recovered approximately $10,619 in cash, a money strap like those used by the bank for wrapping $100 bills, and some suspected marijuana and cocaine. The officers later obtained a warrant to take Edwards's DNA.

Edwards filed a motion to suppress the evidence seized from 8 Hall Street, the items seized from his person after his arrest, his statement that he was Steven Edwards, and the DNA obtained pursuant to the search warrant.  After a two-day hearing, the District Court issued an order denying his motion.  The District Court's order relied in part on Edwards's failure to immediately exit the basement when summoned, characterizing it as a "lack of responsiveness" that "can create alarm among police officers trying to secure a scene."  (App. at 22.)  The Court reasoned that Edwards "was reasonably detained pursuant to the protective sweep of the residence" and that, "[g]iven the seriousness of the offense and the rapidly developing situation, it was reasonable to think that the individuals still inside the house could have been trying to destroy evidence or access a weapon … ."  (App. at 21-22.)

Following the denial of his motion to suppress, Edwards entered into a plea agreement with the government.  Under the terms of the agreement, he pled guilty to bank robbery and waived his right to appeal or collaterally attack his conviction or sentence, but the appellate waiver contained an exception permitting Edwards to seek review of the District Court's suppression rulings.

5

## II. Discussion[2]

Edwards advances two arguments to support his assertion that the District Court should have granted his motion to suppress. First, he argues that the police had no basis to detain him once he exited 8 Hall Street. Second, he argues that, even if there had been a basis to detain him initially, it "evaporated" when Hilliard identified Hampton as the bank robber.

More particularly, as to his initial detention, Edwards contends that the police lacked individualized, reasonable suspicion to detain him because they had already arrested Hampton and they had no reason to suspect that the bank robbery involved more than one perpetrator. Edwards also contends that, "[w]ithout corroborating facts tending to suggest criminal behavior," his delay in emerging from the basement "cannot create reasonable articulable suspicion that criminal activity is afoot, justifying his detention." (Appellant's Opening Br. at 17.)

In assessing whether there was reasonable suspicion to detain a suspect, "we must consider the totality of the circumstances, including the police officer's knowledge, experience, and common sense judgments about human behavior." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). We base our determination of reasonable suspicion on "the events which occurred leading up to the stop or search," and then assess

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review as to the application of the law to those factual findings. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

6

"whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Applying that common-sense analysis, we decline on this record to second-guess the investigative decisions made by the law enforcement officers on the scene. They were investigating a bank robbery that had just occurred. Not long after the robbery, Hilliard reported that she believed she had seen the robber riding a bicycle near the bank. That quickly led the officers to 8 Hall Street and the events that unfolded there. The officers' investigation involved a "swiftly developing" situation, which justified temporarily detaining Hampton when he emerged from the home. *See United States v. Sharpe*, 470 U.S. 675, 686 (1985) (stating that courts should not "indulge in unrealistic second-guessing" where police are acting in a "swiftly developing situation"). Given the prompt response to the bank robbery by Officers Komorowski and Wakeley, coupled with their failure to locate any suspects in the vicinity of the bank, it was quite possible that the robber had fled with the assistance of an accomplice. Because of that possibility, the officers were justified in detaining Edwards and Ford-Bey, at least temporarily, as they continued the investigation.

In addition, we agree with the government that Edwards's failure to promptly comply with the officers' demand to come up from the basement suggested that he might have something to hide or that he was hurriedly concealing or destroying evidence, which gave rise to individualized, reasonable suspicion. *Cf. Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (stating that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"). While Edwards provides innocent explanations for his presence

7

at the home and for his delayed response to the officers' calls to show himself, that does not eliminate the officers' reasonable suspicion that Edwards was engaged in criminal activity. *See United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000) ("A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity.").

Edwards next argues that, even if the police reasonably initiated the investigative detention, the length of the detention violated the Fourth Amendment because "the developing situation … tended to exculpate [him], not incriminate him." (Appellant's Opening Br. at 15-16.) He contends that "any small amount of suspicion that may have existed" at the onset of the detention "dissipate[d] completely" once Hilliard identified Hampton as the bank robber with 95 percent certainty. (*Id*. at 19.) Edwards claims that, at that point, "any reason to detain [him] evaporated and police should have released him." (*Id*.)

This second argument fares no better than the first. The officers did not extend the investigation beyond the bounds of a permissible investigatory stop. They "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions" regarding the three detained individuals, including Edwards, by promptly transporting Hilliard to and from Hampton's house and then immediately retrieving the surveillance photos from the bank after Hilliard's identification was completed. *Sharpe*, 470 U.S. at 686. Edwards presented no evidence at the suppression hearing suggesting that the officers were "dilatory in their investigation" or that the case involved any "delay unnecessary to the legitimate investigation of the law enforcement officers." *Id*. at 687. And though Hilliard incorrectly identified Hampton as the bank robber, we do not agree

8

that suspicion instantly dissipated as to Edwards at that moment. Edwards fails to take account of the officers' reasonable suspicion that the bank robber had one or more accomplices on whom he relied for his getaway and to potentially conceal or destroy traces of the robbery. Therefore, Hilliard's identification of Hampton as the bank robber did not eliminate reasonable suspicion as to Edwards.

## III. Conclusion

For the reasons noted, we will affirm the judgment of the District Court and its denial of Edwards's motion to suppress.