SHAW, Judge,
concurring in the result.
This is admittedly a difficult case, because we are called upon to “ ‘balance between the public interest and the individual’s right to personal security.’ ” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740, 750 (2002), quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). I agree with much of what Judge Cobb says in her dissent; however, I decline to join her special writing because I believe that it treads too heavily on the totality-of-the-circumstances analysis reaffirmed in Arvizu. In criticizing the analysis of the United States Court of Appeals for the Ninth Circuit, the Court in Arvizu noted:
“The court’s evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the ‘totality of the circumstances,’ as our cases have understood that phrase. The court appeared to believe that each observation by Stoddard that was by itself readily susceptible to an innocent explanation was entitled to ‘no weight.’ See 232 F.3d, at 1249-1251. Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], however, precludes this sort of divide-and-conquer analysis. The officer in Terry observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was ‘perhaps innocent in itself,’ we held that, taken together, they ‘warrant *98 ed further investigation.’ 392 U.S., at 22, 88 S.Ct. 1868. See also [United States v.] Sokolow, [490 U.S. 1], at 9, 109 S.Ct. 1581[, 104 L.Ed.2d 1 (1989)] (holding that factors which by themselves were ‘quite consistent with innocent travel’ collectively amounted to reasonable suspicion).”
534 U.S. at 274-75, 122 S.Ct. at 751.
Judge Cobb is right, however, that the factual scenario underlying the trial court’s reasonable-suspicion determination in this case provides a far weaker basis than the one underlying the district court’s determination in Arvizu. However, the ultimate, and inevitably elusive, question is whether the facts presented here are at least sufficient to support the trial court’s finding that Officer Weinbrenner’s investigatory stop was reasonable under the circumstances. My decision to concur in the judgment turns on the following language in Arvizu, with special emphasis on the emphasized portion:
“When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the ‘totality of the circumstances’ of each case to see whether the detaining officer has a ‘particularized and objective basis’ for suspecting legal wrongdoing. See, [United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ]. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person. ’ Id., at 418, 101 S.Ct. 690. See also Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (reviewing court must give ‘due weight’ to factual inferences drawn by resident judges and local law enforcement officers ). Although an officer’s reliance on a mere ‘ “hunch” ’ is insufficient to justify a stop, Terry [v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard, [United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ].
“Our eases have recognized that the concept of reasonable suspicion is somewhat abstract. Ornelas, supra, at 696, 116 S.Ct. 1657 (principle of reasonable suspicion is not a ‘ “finely-tuned standard]” ’); Cortez, supra, at 417, 101 S.Ct. 690 (the cause ‘sufficient to authorize police to stop a person’ is an ‘elusive concept’). But we have deliberately avoided reducing it to ‘ “a neat set of legal rules,” ’ Ornelas, supra, at 695-696, 116 S.Ct. 1657 (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).”
534 U.S. at 273-74, 122 S.Ct. at 750-51, (emphasis added).
Based upon Officer Weinbrenner’s 11 years’ experience as a border-patrol agent; his knowledge concerning the apparent use of Interstate 20 through the Birmingham area as a popular route for smugglers of illegal aliens; and his personal observations — aging vehicle, Texas license plate, heavily-tinted windows, Hispanic driver, nervousness on the part of the driver, and the silhouette of a passenger in the backseat ducking in an apparent attempt to avoid being seen (it is my understanding from the record that Officer Weinbrenner could not tell at the time he decided to stop the vehicle that the subject in the backseat was a child) — I cannot conclude that the trial court erred in denying the appellant’s motion to suppress. To paraphrase the Court in Arvizu:
*99 “A determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct.... Undoubtedly, each of these factors alone is susceptible to innocent explanation, and some factors are more probative than others. Taken together, [I] believe they sufficed to form a particularized and objective basis for [Officer Weinbrenner’s] stopping the vehicle, making the stop reasonable within the meaning of the Fourth Amendment.”
534 U.S. at 277-78, 122 S.Ct. at 753.