## ORNELAS ET AL. *v.* UNITED STATES

No. 95–5257.   Argued March 26, 1996—Decided May 28, 1996

REHNQUIST, C. J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined.   SCALIA, J., filed a dissenting opinion, *post,* p. 700.

*Robert G. LeBell* argued the cause for petitioners. With him on the briefs was *Brian W. Gleason.*

*Cornelia T. L. Pillard* argued the cause for the United States. With her on the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney, Deputy Solicitor General Dreeben,* and *Joel M. Gershowitz.*

*Peter D. Isakoff,* by invitation of the Court, 516 U. S. 1008, argued the cause and filed a brief as *amicus curiae* in support of the judgment below.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioners each pleaded guilty to possession of cocaine with intent to distribute. They reserved their right to appeal the District Court's denial of their motion to suppress the cocaine found in their car. The District Court had found reasonable suspicion to stop and question petitioners as they entered their car, and probable cause to remove one of the interior panels where a package containing two kilograms of cocaine was found. The Court of Appeals opined that the findings of reasonable suspicion to stop, and probable cause to search, should be reviewed "deferentially," and "for clear error." We hold that the ultimate questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed *de novo.*

The facts are not disputed. In the early morning of a December day in 1992, Detective Michael Pautz, a 20-year veteran of the Milwaukee County Sheriff's Department with 2 years specializing in drug enforcement, was conducting drug-interdiction surveillance in downtown Milwaukee.

---

*Tracey Maclin, Steven R. Shapiro,* and *Barbara E. Bergman* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

*Fred E. Inbau, Wayne W. Schmidt, James P. Manak,* and *Bernard J. Farber* filed a brief for Americans for Effective Law Enforcement, Inc., et al. as *amici curiae* urging affirmance.

Pautz noticed a 1981 two-door Oldsmobile with California license plates in a motel parking lot. The car attracted Pautz's attention for two reasons: because older model, two-door General Motors cars are a favorite with drug couriers because it is easy to hide things in them; and because California is a "source State" for drugs. Detective Pautz radioed his dispatcher to inquire about the car's registration. The dispatcher informed Pautz that the owner was either Miguel Ledesma Ornelas or Miguel Ornelas Ledesma from San Jose, California; Pautz was unsure which name the dispatcher gave. Detective Pautz checked the motel registry and learned that an Ismael Ornelas accompanied by a second man had registered at 4 a.m., without reservations.

Pautz called for his partner, Donald Hurrle, a detective with approximately 25 years of law enforcement experience, assigned for the past 6 years to the drug enforcement unit. When Hurrle arrived at the scene, the officers contacted the local office of the Drug Enforcement Administration (DEA) and asked DEA personnel to run the names Miguel Ledesma Ornelas and Ismael Ornelas through the Narcotics and Dangerous Drugs Information System (NADDIS), a federal database of known and suspected drug traffickers. Both names appeared in NADDIS. The NADDIS report identified Miguel Ledesma Ornelas as a heroin dealer from El Centro, California, and Ismael Ornelas, Jr., as a cocaine dealer from Tucson, Arizona. The officers then summoned Deputy Luedke and the department's drug-sniffing dog, Merlin. Upon their arrival, Detective Pautz left for another assignment. Detective Hurrle informed Luedke of what they knew and together they waited.

Sometime later, petitioners emerged from the motel and got into the Oldsmobile. Detective Hurrle approached the car, identified himself as a police officer, and inquired whether they had any illegal drugs or contraband. Petitioners answered "No." Hurrle then asked for identification and was given two California driver's licenses bearing the names

Saul Ornelas and Ismael Ornelas. Hurrle asked them if he could search the car and petitioners consented. The men appeared calm, but Ismael was shaking somewhat. Deputy Luedke, who over the past nine years had searched approximately 2,000 cars for narcotics, searched the Oldsmobile's interior. He noticed that a panel above the right rear passenger armrest felt somewhat loose and suspected that the panel might have been removed and contraband hidden inside. Luedke would testify later that a screw in the doorjam adjacent to the loose panel was rusty, which to him meant that the screw had been removed at some time. Luedke dismantled the panel and discovered two kilograms of cocaine. Petitioners were arrested.

Petitioners filed pretrial motions to suppress, alleging that the police officers violated their Fourth Amendment rights when the officers detained them in the parking lot and when Deputy Luedke searched inside the panel without a warrant.[1] The Government conceded in the court below that when the officers approached petitioners in the parking lot, a reasonable person would not have felt free to leave, so the encounter was an investigatory stop. See 16 F. 3d 714, 716 (CA7 1994). An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion, *Terry* v. *Ohio*, 392 U. S. 1 (1968), and a warrantless search of a car is valid if based on probable cause, *California* v. *Acevedo*, 500 U. S. 565, 569–570 (1991).

---

[1] Petitioners also alleged that they had not given their consent to search the interior of the car. The Magistrate Judge rejected this claim, finding that the record "clearly establishe[d] consent to search the Oldsmobile" and that "neither [petitioner] placed any restrictions on the areas the officers could search." App. 21. The Magistrate ruled that this consent did not give the officers authority to search inside the panel, however, because under Seventh Circuit precedent the police may not dismantle the car body during an otherwise valid search unless the police have probable cause to believe the car's panels contain narcotics. See *United States* v. *Garcia*, 897 F. 2d 1413, 1419–1420 (1990). We assume correct the Circuit's limitation on the scope of consent only for purposes of this decision.

After conducting an evidentiary hearing, the Magistrate Judge concluded that the circumstances gave the officers reasonable suspicion, but not probable cause. The Magistrate found, as a finding of fact, that there was no rust on the screw and hence concluded that Deputy Luedke had an insufficient basis to conclude that drugs would be found within the panel. The Magistrate nonetheless recommended that the District Court deny the suppression motions because he thought, given the presence of the drug-sniffing dog, that the officers would have found the cocaine by lawful means eventually and therefore the drugs were admissible under the inevitable discovery doctrine. See *Nix* v. *Williams*, 467 U. S. 431 (1984).

The District Court adopted the Magistrate's recommendation with respect to reasonable suspicion, but not its reasoning as to probable cause. The District Court thought that the model, age, and source-State origin of the car, and the fact that two men traveling together checked into a motel at 4 o'clock in the morning without reservations, formed a drug-courier profile and that this profile together with the NADDIS reports gave rise to reasonable suspicion of drug-trafficking activity; in the court's view, reasonable suspicion became probable cause when Deputy Luedke found the loose panel. Accordingly, the court ruled that the cocaine need not be excluded.[2]

The Court of Appeals reviewed deferentially the District Court's determinations of reasonable suspicion and probable cause; it would reverse only upon a finding of "clear error."[3]

---

[2] The District Court emphasized twice that it did not reject the Magistrate's recommendation with respect to the inevitable discovery doctrine. App. 30–31, and n. 2; *id.*, at 43–44. But on appeal the Government did not defend the seizure on this alternative ground and the Seventh Circuit considered the argument waived. *Id.*, at 71–72.

[3] While the Seventh Circuit uses the term "clear error" to denote the deferential standard applied when reviewing determinations of reasonable suspicion or probable cause, we think the preferable term is "abuse of discretion." See *Pierce* v. *Underwood*, 487 U. S. 552, 558 (1988). "Clear

16 F. 3d, at 719. The court found no clear error in the reasonable-suspicion analysis and affirmed that determination. *Ibid.* With respect to the probable-cause finding, however, the court remanded the case for a determination on whether Luedke was credible when testifying about the loose panel. *Id.,* at 721–722.

On remand, the Magistrate Judge expressly found the testimony credible. The District Court accepted the finding, and once again ruled that probable cause supported the search. The Seventh Circuit held that determination not clearly erroneous. Judgt. order reported at 52 F. 3d 328 (1995).

We granted certiorari to resolve the conflict among the Circuits over the applicable standard of appellate review. 516 U. S. 963 (1996).[4]

Articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible. They are common-sense, nontechnical conceptions that deal with " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Illinois* v. *Gates,* 462 U. S. 213, 231 (1983) (quoting *Brinegar* v. *United States,* 338 U. S. 160, 175 (1949)); see *United States* v. *Sokolow,* 490 U. S. 1, 7–8 (1989). As such, the standards are "not readily, or even usefully, reduced to a neat set of legal

---

error" is a term of art derived from Rule 52(a) of the Federal Rules of Civil Procedure, and applies when reviewing questions of fact.

[4] Compare, *e. g., United States* v. *Puerta,* 982 F. 2d 1297, 1300 (CA9 1992) (*de novo* review); *United States* v. *Ramos,* 933 F. 2d 968, 972 (CA11 1991) (same), cert. denied, 503 U. S. 908 (1992); *United States* v. *Patrick,* 899 F. 2d 169, 171 (CA2 1990) (same), with *United States* v. *Spears,* 965 F. 2d 262, 268–271 (CA7 1992) (clear error).

The United States, in accord with petitioners, contends that a *de novo* standard of review should apply to determinations of probable cause and reasonable suspicion. We therefore invited Peter D. Isakoff to brief and argue this case as *amicus curiae* in support of the judgment below. 516 U. S. 1008 (1996). Mr. Isakoff accepted the appointment and has well fulfilled his assigned responsibility.

rules." *Gates, supra,* at 232. We have described reasonable suspicion simply as "a particularized and objective basis" for suspecting the person stopped of criminal activity, *United States* v. *Cortez,* 449 U. S. 411, 417–418 (1981), and probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found, see *Brinegar, supra,* at 175–176; *Gates, supra,* at 238. We have cautioned that these two legal principles are not "finely-tuned standards," comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence. *Gates, supra,* at 235. They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed. *Gates, supra,* at 232; *Brinegar, supra,* at 175 ("The standard of proof [for probable cause] is . . . correlative to what must be proved"); *Ker* v. *California,* 374 U. S. 23, 33 (1963) ("This Cour[t] [has a] long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application"; "[e]ach case is to be decided on its own facts and circumstances" (internal quotation marks omitted)); *Terry* v. *Ohio,* 392 U. S., at 29 (the limitations imposed by the Fourth Amendment "will have to be developed in the concrete factual circumstances of individual cases").

The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another

way, whether the rule of law as applied to the established facts is or is not violated." *Pullman-Standard* v. *Swint*, 456 U. S. 273, 289, n. 19 (1982).

We think independent appellate review of these ultimate determinations of reasonable suspicion and probable cause is consistent with the position we have taken in past cases. We have never, when reviewing a probable-cause or reasonable-suspicion determination ourselves, expressly deferred to the trial court's determination. See, *e. g.*, *Brinegar, supra* (rejecting District Court's conclusion that the police lacked probable cause); *Alabama* v. *White*, 496 U. S. 325 (1990) (conducting independent review and finding reasonable suspicion). A policy of sweeping deference would permit, "[i]n the absence of any significant difference in the facts," "the Fourth Amendment's incidence [to] tur[n] on whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute probable cause." *Brinegar, supra*, at 171. Such varied results would be inconsistent with the idea of a unitary system of law. This, if a matter-of-course, would be unacceptable.

In addition, the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify, the legal principles. See *Miller* v. *Fenton*, 474 U. S. 104, 114 (1985) (where the "relevant legal principle can be given meaning only through its application to the particular circumstances of a case, the Court has been reluctant to give the trier of fact's conclusions presumptive force and, in so doing, strip a federal appellate court of its primary function as an expositor of law").

Finally, *de novo* review tends to unify precedent and will come closer to providing law enforcement officers with a defined " 'set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of

law enforcement.'" *New York* v. *Belton,* 453 U. S. 454, 458 (1981); see also *Thompson* v. *Keohane,* 516 U. S. 99, 115 (1995) ("[T]he law declaration aspect of independent review potentially may guide police, unify precedent, and stabilize the law," and those effects "serve legitimate law enforcement interests").

It is true that because the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multi-faceted, "one determination will seldom be a useful 'precedent' for another," *Gates, supra,* at 238, n. 11. But there are exceptions. For instance, the circumstances in *Brinegar, supra,* and *Carroll* v. *United States,* 267 U. S. 132 (1925), were so alike that we concluded that reversing the Court of Appeals' decision in *Brinegar* was necessary to be faithful to *Carroll. Brinegar, supra,* at 178 ("Nor . . . can we find in the present facts any substantial basis for distinguishing this case from the *Carroll* case"). We likewise recognized the similarity of facts in *United States* v. *Sokolow, supra,* and *Florida* v. *Royer,* 460 U. S. 491 (1983) (in both cases, the defendant traveled under an assumed name; paid for an airline ticket in cash with a number of small bills; traveled from Miami, a source city for illicit drugs; and appeared nervous in the airport). The same was true both in *United States* v. *Ross,* 456 U. S. 798 (1982), and *California* v. *Acevedo,* 500 U. S. 565 (1991), see *id.,* at 572 ("The facts in this case closely resemble the facts in *Ross*"); and in *United States* v. *Mendenhall,* 446 U. S. 544 (1980), and *Reid* v. *Georgia,* 448 U. S. 438 (1980), see *id.,* at 443 (Powell, J., concurring) ("facts [in *Mendenhall*] [are] remarkably similar to those in the present case"). And even where one case may not squarely control another one, the two decisions when viewed together may usefully add to the body of law on the subject.

The Court of Appeals, in adopting its deferential standard of review here, reasoned that *de novo* review for warrantless searches would be inconsistent with the "'great deference'" paid when reviewing a decision to issue a warrant, see *Illi-*

*nois* v. *Gates,* 462 U. S. 213 (1983). See *United States* v. *Spears,* 965 F. 2d 262, 269–271 (CA7 1992). We cannot agree. The Fourth Amendment demonstrates a "strong preference for searches conducted pursuant to a warrant," *Gates, supra,* at 236, and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive.

We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference. For example, what may not amount to reasonable suspicion at a motel located alongside a transcontinental highway at the height of the summer tourist season may rise to that level in December in Milwaukee. That city is unlikely to have been an overnight stop selected at the last minute by a traveler coming from California to points east. The 85-mile width of Lake Michigan blocks any further eastward progress. And while the city's salubrious summer climate and seasonal attractions bring many tourists at that time of year, the same is not true in December. Milwaukee's average daily high temperature in that month is 31 degrees and its average daily low is 17 degrees; the percentage of possible sunshine is only 38 percent. It is a reasonable inference that a Californian stopping in Milwaukee in December is either there

to transact business or to visit family or friends. The background facts, though rarely the subject of explicit findings, inform the judge's assessment of the historical facts.

In a similar vein, our cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists. See, *e. g.*, *United States* v. *Ortiz*, 422 U. S. 891, 897 (1975). To a layman the sort of loose panel below the back seat armrest in the automobile involved in this case may suggest only wear and tear, but to Officer Luedke, who had searched roughly 2,000 cars for narcotics, it suggested that drugs may be secreted inside the panel. An appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable.

We vacate the judgments and remand the case to the Court of Appeals to review *de novo* the District Court's determinations that the officer had reasonable suspicion and probable cause in this case.

*It is so ordered.*

JUSTICE SCALIA, dissenting.

The Court today decides that a district court's determinations whether there was probable cause to justify a warrantless search and reasonable suspicion to make an investigatory stop should be reviewed *de novo*. We have in the past reviewed some mixed questions of law and fact on a *de novo* basis, and others on a deferential basis, depending upon essentially practical considerations. Because, with respect to the questions at issue here, the purpose of the determination and its extremely fact-bound nature will cause *de novo* review to have relatively little benefit, it is in my view unwise to require courts of appeals to undertake the searching inquiry that standard requires. I would affirm the judgment of the Court of Appeals.

As the Court recognizes, determinations of probable cause and reasonable suspicion involve a two-step process. First,

a court must identify all of the relevant historical facts known to the officer at the time of the stop or search; and second, it must decide whether, under a standard of objective reasonableness, those facts would give rise to a reasonable suspicion justifying a stop or probable cause to search. See *ante*, at 696–697. Because this second step requires application of an objective legal standard to the facts, it is properly characterized as a mixed question of law and fact. See *ibid.; Pullman-Standard* v. *Swint*, 456 U. S. 273, 289, n. 19 (1982).

Merely labeling the issues "mixed questions," however, does not establish that they receive *de novo* review. While it is well settled that appellate courts "accep[t] findings of fact that are not 'clearly erroneous' but decid[e] questions of law *de novo*," *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 948 (1995), there is no rigid rule with respect to mixed questions. We have said that "deferential review of mixed questions of law and fact is warranted when it appears that the district court is 'better positioned' than the appellate court to decide the issue in question or that probing appellate scrutiny will not contribute to the clarity of legal doctrine." *Salve Regina College* v. *Russell*, 499 U. S. 225, 233 (1991) (citing *Miller* v. *Fenton*, 474 U. S. 104, 114 (1985)).

These primary factors that counsel in favor of deferential review of some mixed questions of law and fact—expertise of the district court and lack of law-clarifying value in the appellate decision—are ordinarily present with respect to determinations of reasonable suspicion and probable cause. The factual details bearing upon those determinations are often numerous and (even when supported by uncontroverted police testimony) subject to credibility determinations. An appellate court never has the benefit of the district court's intimate familiarity with the details of the case—nor the full benefit of its hearing of the live testimony, unless the district court makes specific findings on the "totality of the circumstances" bearing upon the stop or search.

As we recognized in *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384 (1990), a case holding that deferential (abuse-of-discretion) review should be applied to a district court's Federal Rule of Civil Procedure 11 determination that an attorney did not conduct a reasonable inquiry or entertain a "substantiated belief" regarding the nonfrivolousness of the complaint, see *id.*, at 393: A district court, "[f]amiliar with the issues and litigants . . . is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard . . . ." *Id.*, at 402.

Moreover, as the Court acknowledges, "reasonable suspicion" and "probable cause" are "commonsense, nontechnical conceptions that deal with ' "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." ' " *Ante*, at 695 (quoting *Illinois* v. *Gates*, 462 U. S. 213, 231 (1983) (quoting *Brinegar* v. *United States*, 338 U. S. 160, 175 (1949))). Where a trial court makes such commonsense determinations based on the totality of circumstances, it is ordinarily accorded deference. What we said in a case concerning the question whether certain payments were a "gift" excludable from income under the Internal Revenue Code is equally pertinent here.

> "Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the . . . standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact." *Commissioner* v. *Duberstein*, 363 U. S. 278, 289 (1960).

With respect to the second factor counseling in favor of deferential review, level of law-clarifying value in the appellate decision: Law clarification requires generalization, and some issues lend themselves to generalization much more than others. Thus, in *Pierce* v. *Underwood*, 487 U. S. 552, 562 (1988), a principal basis for our applying an abuse-of-discretion standard to a district court's determination that the United States' litigating position was "substantially justified" within the meaning of the Equal Access to Justice Act, 28 U. S. C. § 2412(d), was that the question was "a multifarious and novel question, little susceptible, for the time being at least, of useful generalization." 487 U. S., at 562. Probable-cause and reasonable-suspicion determinations are similarly resistant to generalization. As the Court recognizes, these are "fluid concepts," "'not readily, or even usefully, reduced to a neat set of legal rules'"; and "because the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multifaceted, 'one determination will seldom be a useful "precedent" for another.'" *Ante*, at 695–696, 698 (quoting *Illinois* v. *Gates, supra*, at 232, 238, n. 11). The Court maintains that there will be exceptions to this—that fact patterns will occasionally repeat themselves, so that a prior *de novo* appellate decision will provide useful guidance in a similar case. *Ante*, at 698. I do not dispute that, but I do not understand why we should allow the exception to frame the rule. Here, as in *Anderson* v. *Bessemer City*, 470 U. S. 564, 574–575 (1985), "[d]uplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources."

The facts of this very case illustrate the futility of attempting to craft useful precedent from the fact-intensive review demanded by determinations of probable cause and reasonable suspicion. On remand, in conducting *de novo* review, the Seventh Circuit might consider, *inter alia*, the following

factors relevant to its determination whether there was probable cause to conduct a warrantless search and reasonable suspicion justifying the investigatory stop: (i) the two NADDIS tips; (ii) that the car was a 1981 two-door General Motors product; (iii) that the car was from California, a source State; (iv) that the car was in Milwaukee; (v) that it was December; (vi) that one suspect checked into the hotel at 4 a.m.; (vii) that he did not have reservations; (viii) that he had one traveling companion; (ix) that one suspect appeared calm but shaking; and (x) that there was a loose panel in the car door. If the Seventh Circuit were to find that this unique confluence of factors supported probable cause and reasonable suspicion, the absence of any one of these factors in the next case would render the precedent inapplicable.

Of course, even when all of the factors *are* replicated, use of a *de novo* standard as opposed to a deferential standard will provide greater clarity only where the latter would not suffice to set the trial court's conclusion aside. For where the appellate court holds, on the basis of deferential review, that it *was* reversible error for a district court to find probable cause or reasonable suspicion in light of certain facts, it advances the clarity of the law just as much as if it had reversed the district court after conducting plenary review.

In the present case, an additional factor counseling against *de novo* review must be mentioned: The prime benefit of *de novo* appellate review in criminal cases is, of course, to prevent a miscarriage of justice that might result from permitting the verdict of guilty to rest upon the legal determinations of a single judge. But the issue in these probable-cause and reasonable-suspicion cases is not innocence but deterrence of unlawful police conduct. That deterrence will not be *at all* lessened if the trial judge's determination, right or wrong, is subjected to only deferential review.

The Court is wrong in its assertion, *ante*, at 698–699, that unless there is a dual standard of review—deferential review of a magistrate's decision to issue a warrant, and *de novo*

review of a district court's *ex post facto* approval of a warrantless search—the incentive to obtain a warrant would be eliminated. In *United States* v. *Leon,* 468 U. S. 897, 913 (1984), we held that "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate . . . should be admissible in the prosecutor's case in chief." Only a warrant can provide this assurance that the fruits of even a technically improper search will be admissible. Law enforcement officers would still have ample incentive to proceed by warrant.

Finally, I must observe that the Court does not appear to have the courage of its conclusions. In an apparent effort to reduce the unproductive burden today's decision imposes upon appellate courts, or perhaps to salvage some of the trial court's superior familiarity with the facts that it has cast aside, the Court suggests that an appellate court should give "due weight" to a trial court's finding that an officer's inference of wrongdoing (*i. e.*, his assessment of probable cause to search) was reasonable. *Ante,* at 700. The Court cannot have it both ways. This finding of "reasonableness" is precisely what it has told us the appellate court must review *de novo;* and in *de novo* review, the "weight due" to a trial court's finding is zero. In the last analysis, therefore, the Court's opinion seems to me not only wrong but contradictory.

\*　　\*　　\*

I would affirm the judgment of the Seventh Circuit on the ground that it correctly applied a deferential standard of review to the District Court's findings of probable cause and reasonable suspicion.