[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12 and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} Defendant-appellant Martin J. Richter[1] appeals his conviction following a no-contest plea for driving with a prohibited breath-alcohol content in violation of R.C. 4511.19(A)(3). Richter entered his plea[2] after the trial court had denied, in part, his motion to suppress. The trial court accepted the plea and sentenced Richter accordingly.
 {¶ 3} The events precipitating Richter's arrest, as testified to by Blue Ash Police Officer Chris Zalenski at the suppression hearing are as follows: On October 31, 2002 at 11:35 p.m. Zalenski, who was in full uniform and on duty in a marked police car, observed Richter getting into his car in the parking lot of a Speedway gas station. Officer Zalenski saw Richter drop what appeared to be something plastic out of his car window. Officer Zalenski stopped and picked up the item, which was the top of a cellophane wrapper for a pack of cigarettes. Officer Zalenski then got back into his police cruiser and followed Richter's car, which had left the parking lot. After following Richter's car for a short distance, Officer Zalenski activated his lights, and Richter pulled his car to the side of the road.
 {¶ 4} When Officer Zalenski approached Richter's vehicle, he told Richter that he had stopped him for littering. Officer Zalenski testified that he had also noticed that the window tinting on Richter's car was very dark. Officer Zalenski further testified that he had smelled an odor of alcohol coming from Richter, and that he had noticed that Richter's face was flushed, his eyes were red and glassy, and his speech was "thick-tongued." When Officer Zalenski asked Richter if he had been drinking, Richter admitted to having some mixed drinks at a bowling alley and also later having four beers. Officer Zalenksi then asked Richter if he would submit to field sobriety tests. Richter complied. After Richter failed to satisfactorily perform three field sobriety tests, Officer Zalenski arrested Richter for driving under the influence. Officer Zalenski then transported Richter to a police station, where he consented to an intoxilyzer test. The test showed that Richter had a blood-alcohol level of .115.
 {¶ 5} The trial court journalized an entry overruling, in part, Richter's motion to suppress. The trial court sustained the motion as it pertained to a portion of the field sobriety tests. The trial court found that because Officer Zalenski had reasonable suspicion to stop Richter, either for littering or for the illegally tinted window, the traffic stop was valid. The trial court further held that Officer Zalenski's observations, when combined with Richter's admission that he had been drinking, provided Officer Zalenski with reasonable suspicion to further detain Richter and to administer field sobriety tests. The trial court then found that Officer Zalenski's observations, Richter's admission that he had been drinking, and Richter's poor performance on the field sobriety tests gave Officer Zalenski probable cause to arrest Richter for DUI. But the trial court did suppress the results of one of the field sobriety tests, the one-legged stand, because Officer Zalenski did not strictly comply with established police procedures when administering that test.
 {¶ 6} In his sole assignment of error, Richter argues the trial court erred in denying his motion to suppress evidence because (1) Officer Zalenski did not have probable cause to stop his vehicle for littering, (2) the stop for littering was pretextual, and (3) the stop was a violation of his equal-protection rights. Richter contends that because his Fourth Amendment rights were violated, all of the evidence from the stop should have been suppressed as "fruit of the poisonous tree."
 {¶ 7} When reviewing a ruling on a motion to suppress evidence, we must defer to the trial court's findings of historical facts, but assess the application of the law to those facts de novo.[3] In State v.Johnson, this court explained "that one of two standards applies when determining whether a stop of a vehicle violates the Fourth Amendment to the United States Constitution," and that "[t]he applicable standard depends on the type of traffic stop."[4] We said that "[a]n investigative stop occurs when a police officer `does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion.' For an investigative stop to be proper, an officer must have a reasonable, articulable suspicion that a crime has taken place or is occurring. In contrast, a noninvestigatory traffic stop occurs when a police officer witnesses a violation of the traffic code. In that situation, the stop is supported by probable cause."[5] Probable cause exists when there are "* * * facts or circumstances `sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'"[6] Thus, a police officer's observation of a traffic offense * * * constitutes probable cause for such a traffic stop."[7]
 {¶ 8} In this case, Officer Zalenski stopped Richter for a traffic violation, littering, and the stop, therefore, had to be supported by probable cause. Thus, the trial court erred as a matter of law when it held that Officer Zelinski needed only reasonable suspicion. Richter argues that because he threw the wrapper out of his parked car into a private parking lot, he did not violate R.C. 4511.82 and, consequently, that Officer Zalenski did not have probable cause to stop him. We agree.
 {¶ 9} R.C. 4511.82 provides, "(A) [N]o operator or occupant of a motor vehicle shall, regardless of intent, throw, drop, discard, or deposit litter from any motor vehicle in operation upon any street, road, or highway, except into a litter receptacle in a manner that prevents its being carried away or deposited by the elements * * *." Because Richter's act of throwing a small cellophane wrapper out of the window of his parked car clearly did not violate R.C. 4511.82, Officer Zalenski did not have probable cause to stop him. Consequently, any evidence obtained thereafter should have been suppressed. Because the trial court erred in holding that Zalenski had appropriate grounds to stop Richter, we need not address Richter's remaining arguments. As a result, we sustain Richter's sole assignment of error.
 {¶ 10} The trial court's judgment is accordingly reversed, and this cause is remanded for further proceedings consistent with this judgment entry and the law.
 {¶ 11} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman P.J., Sundermann and Winkler, JJ.
[1] His name also appears as Marty Richter in portions of the record.
[2] In exchange for his plea, the state dismissed a littering-from-a-motor-vehicle charge under R.C. 4511.82 and a DUI charge under R.C. 4511.19(A)(1).
[3] Ornelas v. United States, (1996), 517 U.S. 690, 696-699,116 S.Ct. 1657.
[4] 1st Dist. Nos. C-010621, and C-010622, 2002-Ohio-2884, at ¶ 5.
[5] Id. at ¶¶ 6-7.
[6] State v. Tibbetts, 92 Ohio St.3d 146, 153, 2001-Ohio-132,749 N.E.2d 226.
[7] Johnson, supra, at ¶ 7.