FARMER, J.
 

 Defendant appeals a conviction for possession of cocaine for sale. We agree the trial court should have granted his motion to suppress evidence obtained in an invalid search.
 

 Two officers, Lucas and Schmidt, were involved in the search and seizure of defendant. Lucas heard that a certain address was a problem area in the community. Residents at homeowners meetings, along with reports from confidential informants, gave Lucas to believe that people might be selling drugs at this residence. He conducted surveillance from an unmarked vehicle.
 

 Defendant arrived at the address late one afternoon and walked up to 3 or 4 people on the front porch. Defendant’s contact with them was very brief. According to Lucas, defendant opened his hand and looked up and down the street. Lucas could not see what was in his hand. Each one of the porch people took something from his hand and handed him money. Defendant pocketed what he received from them and drove away.
 

 Lucas radioed other officers. Schmidt pulled defendant over. He saw defendant reach in the direction of the auto’s center console and toward the floor. Acting on the radio call from Lucas that a narcotics transaction had just taken place, and suspecting possession also of a weapon, he directed defendant to exit the auto. He asked defendant if he had any weapons on him, and defendant said he did not, raising his shirt to show his torso. Schmidt proceeded to perform a search of defendant’s person. As he carried out the search he asked if defendant had anything in his shoes. Defendant responded in the negative. Before he could order defendant to remove his shoes, defendant began doing so. A bag of what appeared to be cocaine lay inside one shoe. Schmidt proceeded to complete the arrest. Defendant was incarcerated, tried and convicted.
 

 Both officers testified as to their experience over many years investigating narcotics transactions. Both told of similar patterns for such transactions. Lucas cited the brevity of the event, the lack of eye contact between the persons involved, the manner of looking up and down the street, and the exchange of paper currency for some object, as all being “consistent with hundreds of transactions I’ve witnessed.”
 

 The only argument made by the state at the suppression hearing to justify the sei
 
 *177
 
 zure and search of defendant was that police had probable cause of a narcotics violation when they stopped his auto and seized him. Conspicuously, the state made no attempt to argue in the trial court — as it now does on appeal — that defendant consented to the search. We thus proceed to analyze the propriety of the seizure and search solely on the basis of probable cause without consent.
 

 We accept the trial court’s findings of historical fact as correct but review de novo whether the application of the law to the historical facts establishes an adequate basis for the trial court’s ruling.
 
 Parker v. State,
 
 873 So.2d 270, 279 (Fla.2004);
 
 see also Ornelas v. United States,
 
 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).
 

 Defendant argues that this case cannot be fairly distinguished from
 
 Coney v. State,
 
 820 So.2d 1012 (Fla. 2d DCA 2002). There police watched defendant exchange an object for money in an area known for drug activity and arrests. From their training and experience, they believed they had seen a narcotics violation. They pursued Coney and as they approached perceived he had something in his mouth. They ordered him to spit out the object, and a bag of marijuana emerged. The trial court denied suppression. The Second District reversed, explaining that in spite of their reasonable suspicion to detain, police did not have probable cause to search. “[Tjhey did not see what was in [his] hand ... they did not see what was in [his] mouth ... and they did not see [him] involved in more than one transaction.” 820 So.2d at 1014. “While the officers saw money in Coney’s hand after the transaction, and while they had a suspicion that a crime might have occurred, they did not have probable cause to effect Coney’s arrest before Coney was ordered to empty his mouth.”
 
 Id.
 
 at 1015.
 

 Similarly, in this case Lucas did not see what defendant exchanged for money. Schmidt did not see what was in his shoe. They did not see him similarly involved in more than one occasion. These patterns on which they rely also occur in innocent public transactions and are not unique to narcotics violations. These patterns may be enough to inform a suspicion for further investigation — perhaps even enough for a Terry
 
 [1]
 
 stop or a stop under the Florida Stop and Frisk Law
 
 [2]
 
 — but they fall short of the requirements for probable cause. As in
 
 Coney,
 
 police did not have probable cause to search him without his consent.
 
 See also Robinson v. State,
 
 976 So.2d 1229, 1233 (Fla. 2d DCA 2008) (mere suspicion person is carrying illegal drugs insufficient for probable cause).
 

 Reversed.
 

 WARNER and LEVINE, JJ., concur.
 

 [1]
 

 .
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 [2]
 

 . § 901.151, Fla. Stat. (2009).