NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-4639

_____

UNITED STATES OF AMERICA

v.

RAYMOND HORNE,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cr-00521)
District Judge: Honorable Garrett E. Brown, Junior

_____

Submitted Under Third Circuit LAR 34.1(a)
July 2, 2010

Before: SLOVITER, BARRY and HARDIMAN, *Circuit Judges*.

Filed: July 6, 2010

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

Raymond Horne appeals his judgment of conviction for violating 18 U.S.C. § 922(g)(1). Horne claims the District Court erred when it denied his motion to suppress. We will affirm.

I.

Because we write for the parties, we recite only the essential facts.

The Felix Fuld public housing complex, also known as "Little Bricks," is located in a high-crime area of Newark, New Jersey. In the evening of February 15, 2009, Horne drove to Little Bricks to drop off relatives who lived there, and to visit briefly with other family members. Horne left the complex at about 11:30 p.m., carrying his car keys in his right pants pocket and a .25-caliber semiautomatic handgun in the right lower pocket of his hooded sweatshirt. Horne was returning to his car, walking across the Little Bricks courtyard and parking lot, when he was spotted by two plainclothes Newark police officers driving past the complex in an unmarked construction van.

At this point the parties' versions of the facts diverge. Detective Pedro Torres, a 13-year veteran of the Newark Police Department, stated that he and his partner were on patrol driving very slowly while looking for illicit activity in the Little Bricks complex. As Torres and his partner drove by, they could see Horne making his way through the illuminated parking lot, and slowed further to take a look at him. According to Torres, Horne slowed his walk, stared at the van and its occupants, and "kind of like just put his

2

hand on [his] side which led us to believe that he may have a gun or trying to show us that he may have a gun to intimidate us." Torres noted that in high crime areas, he had previously been mistaken for a robber while driving in an unmarked van and dressed in plainclothes. Based on his training and experience, as well as the totality of the situation confronting him, Torres stated: "I took [Horne's actions] as—he probably thought we were there to rob him or do something and he demonstrated to us that he had a weapon and he was ready." Torres and his partner then jumped out of the van with weapons drawn, and effected the stop that resulted in the discovery of Horne's gun.

Horne, by contrast, testified that he took no notice of the unmarked police van until the officers emerged from it. He also stated that his only motion towards his right side was to reach into his pants pocket, grab his car keys, and push the button that would unlock his car doors remotely.

II.

Horne's sole claim on appeal is that the District Court should have suppressed his gun because the investigative stop to which he was subjected was not supported by reasonable articulable suspicion. We review the District Court's factual findings for clear error, giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). We review *de novo* the District Court's ultimate determination as to the existence of reasonable suspicion. *Id.*

3

The District Court found credible Detective Torres's statements that Horne stared at the van and "held onto his right side, as though he was indicating to the person or people in the van that he had a weapon," in an attempt to "intimidat[e]" the occupants of the van and "communicate . . . that they should stay away from him." In light of this "nervous or even intentional gesture to his right side," as well as the late hour of the night and the prevalence of crime in the area, the District Court found that the officers possessed reasonable suspicion to make an investigative stop.[1] On appeal, Horne does not challenge the District Court's factual findings; instead, he maintains that his conduct was not sufficient to justify the investigatory stop.

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The requisite "level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). In determining whether reasonable suspicion exists, "the totality of the

---

[1] The law of New Jersey includes a presumption that a person carrying a firearm lacks a permit to do so. N.J. Stat. Ann. § 2C:39-2(b). We have previously reserved judgment as to "under what circumstances New Jersey's presumption would provide reasonable suspicion for a *Terry* stop." *United States v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000). Taken at face value, however, the presumption would dictate that when police in New Jersey reasonably suspect that a person is carrying a firearm, they also have reasonable suspicion that he is committing a crime unless the circumstances affirmatively suggest he has a permit.

circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Even a series of lawful acts or occurrences may give rise to reasonable suspicion. *Wardlow*, 528 U.S. at 125 (citing *Terry*, 392 U.S. at 5-6, 30). A suspect's "nervous, evasive behavior is a pertinent factor," *Wardlow*, 528 U.S. at 124 (citations omitted), as is the fact that the encounter occurs in a high-crime area, *id.* at 124, and the time of day at which it occurs, *id.* at 129 (Stevens, J., concurring in part and dissenting in part). Police are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 418).

Here, Horne presents the case as if Detective Torres testified that Horne merely stared at the van and reached to his side. But Detective Torres testified—and the District Court found—not only that Horne stared and reached to his side, but that he stared in an intimidating way and motioned as if he had a gun. In light of the late hour and the prevalence of crime in the neighborhood, this is precisely the type of inference that Detective Torres's 13 years of experience entitled him to draw.[2] *See id.*

---

[2] We also note that the District Court had the benefit of physical demonstrations by both Torres and Horne of precisely the types of motions that Horne made during their encounter, and determined that Torres reasonably concluded that Horne was armed. We are especially loathe to second-guess the factual findings of trial courts when, as in this case, those findings were made following in-court movements and gestures that supplemented the verbal testimony.

5

For these reasons, the District Court did not clearly err when it found that Horne acted as if he illegally possessed a gun. Because there was no clear error regarding this fact, it follows that police had reasonable articulable suspicion to justify a *Terry* stop. Accordingly, we will affirm Horne's judgment of conviction.