CANADY, C.J.
The State seeks review of Hankerson v. State, 32 So.3d 175 (Fla. 4th DCA 2010), in which the Fourth District Court of Appeal reversed Anthony L. Hankerson’s conviction for possession of cocaine for sale, holding that the trial court should have granted Hankerson’s motion to suppress evidence obtained from a search undertaken without probable cause. In its decision, the Fourth District refused to consider the State’s argument on appeal that the evidence was legally discovered following a proper investigatory stop because the theory had not been raised in the trial court. The Fourth District’s refusal to consider the State’s theory expressly and directly conflicts with Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 645 (Fla.1999), which held that “an appel-lee, in arguing for the affirmance of a judgment, is not limited to legal arguments expressly asserted as grounds for the judgment in the court before.” We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We conclude that the Fourth District improperly curtailed the State’s argument on appeal and that the trial court properly determined that the search was based on probable cause. We therefore quash the Fourth District’s decision.
I. BACKGROUND
After being charged with possession of cocaine with intent to sell within 1000 feet of a school, Hankerson filed a motion to suppress evidence, asserting that the evidence was obtained from an illegal search and seizure. Specifically, Hankerson asserted that the law enforcement officer who searched him lacked probable cause to believe that he had committed a felony. At the hearing on the motion to suppress, the State contended that the search was properly based on probable cause and presented testimony from two law enforcement officers.
Officer Mark Lucas, of the Delray Beach Police Department, testified that on the afternoon of February 28, 2008, he participated in the surveillance of a residence that, based on information from residents of the neighborhood and confidential informants, was suspected of being the location of illegal drug transactions. Officer Lucas explained that he observed Hankerson arrive at the residence, exit an SUV, and approach a group of people on the front porch. While looking up and down the street, Hankerson opened his hand. Each of three individuals on the porch consecutively took something from Hankerson’s hand — Officer Lucas could not see what the objects were — and “quickly” gave him paper currency in return. Hankerson’s contact with the individuals was “[vjery brief.” Hankerson put the money in his pocket, returned to the SUV, and left. Officer Lucas testified that he had worked with the Delray Beach Police Department’s street-level narcotics unit for eleven years and that based on his surveillance that afternoon and his years of experience, he believed that Hankerson had participated in a narcotics transaction. According to Officer Lucas, “that brief of a contact, the limited eye contact, the way [Hanker-son] was looking up and down the street, and the exchange of paper currency for these items with three different subjects” was consistent with the hundreds of illegal drug transactions he had witnessed as a law enforcement officer. Because Officer Lucas believed that Hankerson had participated in an illegal drug transaction, he *504 radioed to other officers, requesting that they perform a traffic stop of Hankerson.
Officer James Schmidt, of the Delray Beach Police Department, testified that on the afternoon of February 28, 2008, at the direction of Officer Lucas, he used his lights and sirens to pull over a vehicle driven by Hankerson. As he approached the vehicle, Officer Schmidt observed Han-kerson reach toward the center console and then down toward the floor. When Officer Schmidt asked Hankerson to exit the vehicle, Hankerson complied. Office Schmidt asked Hankerson if he had any drugs or weapons. Hankerson stated that he was “out of the game” and lifted his shirt to show his torso. Officer Schmidt asked Hankerson if he had anything in his shoes. Before Officer Schmidt could ask Hankerson to remove his shoes, Hanker-son began doing so. Officer Schmidt testified that Hankerson appeared “a little bit hesitant.” Hankerson began to remove his right shoe and then removed his left shoe instead. When Hankerson did take off his right shoe, he attempted to conceal in his hand a bag that had been in his shoe. The bag contained small, zip-top bags filled with a substance that Officer Schmidt suspected was cocaine. Officer Schmidt arrested Hankerson and field-tested the substance in the bags, which tested positive for cocaine. Officer Schmidt testified that based on his experience, each of the small bags had a street value of about twenty dollars. Officer Schmidt further testified that he found sixty-three dollars in Han-kerson’s right front pocket.
The trial court denied Hankerson’s motion to suppress. The trial court found that Officer Lucas had “probable cause to believe that he saw a narcotic transaction, even though he could not identify the substance” and that “all of the other facts and circumstances give cause for the subsequent search of Mr. Hankerson.” After a jury trial, Hankerson was convicted of one count of the lesser included offense of possession of cocaine for sale and sentenced to ten years in state prison.
Hankerson appealed his conviction and sentence to the Fourth District. Hanker-son asserted that because Officers Lucas and Schmidt did not have probable cause to search him, the trial court should have granted his motion to suppress. In response, the State offered two theories as to why the trial court did not err in denying the motion to suppress. The State contended that the officers did have probable cause to search Hankerson and, alternatively, that Officer Schmidt discovered the evidence as a result of a lawful investigative stop pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which was followed by Hankerson’s voluntary removal of his shoes.
Relying on Coney v. State, 820 So.2d 1012, 1013-15 (Fla. 2d DCA 2002) (holding there was no probable cause to search where law enforcement officers observed the defendant engage in a single hand-to-hand transaction in an area known for drug activity), the Fourth District concluded that the trial court erred in finding that the officers had probable cause to search Hankerson. As to the State’s theory that Officer Schmidt merely conducted an investigatory stop, the Fourth District explained that it did not consider that argument because the State had not raised that theory in the trial court.
The State petitioned this Court for review of the Fourth District’s decision on the basis of express and direct conflict. We granted review based on conflict with Radio Station WQBA, which held that an appellee need not have previously raised a basis for affirming the trial court’s decision in order to assert that position on appeal.
*505 II. ANALYSIS
In the analysis that follows, we first address the conflict between the Fourth District’s decision and our decision in Radio Station WQBA. We then explain why the trial court did not err in denying Hankerson’s motion to suppress.
In Radio Station WQBA, this Court resolved a conflict regarding whether a trial court’s ruling could be affirmed based on a theory or principle of law that was not argued to the trial court. This Court adhered to the principle generally known as the “tipsy coachman” rule, explaining that a trial court’s ruling “will be upheld if there is any basis which would support the judgment in the record.” Radio Station WQBA, 731 So.2d at 644.
This Court then further explained that because a trial court’s ruling must be affirmed where the record supports any legal basis for the judgment, an appellee may raise an argument on appeal that was not raised in the trial court so long as the argument has a reasonable basis in the record.
If an appellate court, in considering whether to uphold or overturn a lower court’s judgment, is not limited to consideration of the reasons given by the trial court but rather must affirm the judgment if it is legally correct regardless of those reasons, it follows that an appellee, in arguing for the affirmance of a judgment, is not limited to legal arguments expressly asserted as grounds for the judgment in the court below. It stands to reason that the appellee can present any argument supported by the record even if not expressly asserted in the lower court. See MacNeill v. O’Neal, 238 So.2d 614, 615 (Fla.1970). In MacNeill, this Court cited prior cases holding that an appellee “not aggrieved by the lower court’s decision need not file cross-assignments of error in order to have the points considered on appeal.” See Cerniglia v. C & D Farms, Inc., 203 So.2d 1 (Fla.1967); Hall v. Florida Bd. of Pharmacy, 177 So.2d 833 (Fla.1965). “These cases recognize that a party who is content with the judgment below need not assign error in order to support that judgment and is not limited in the appellate courts to the theories of recovery stated by the trial court.” MacNeill, 238 So.2d at 615. While the Rules of Appellate Procedure no longer provide for assignments of error, what the MacNeill court said is analogous to saying that an appellee need not raise and preserve alternative grounds for the lower court’s judgment in order to assert them in defense when the appellant attacks the judgment on appeal.
Id. at 645. In brief, this Court concluded that the reviewing court may not preclude an appellee from raising an alternative basis to support the trial court’s ruling solely because the argument was not preserved.
We adhere to our decision in Radio Station WQBA on this point. A trial court’s ruling should be upheld if there is any legal basis in the record which supports the judgment. It follows that to aid the appellate court in its task, the appellee should be permitted to explicate any legal basis supporting the trial court’s judgment. Accordingly, the Fourth District erred in refusing to consider the State’s argument on appeal that Hankerson voluntarily removed his shoes following a proper investigatory stop.
We need not, however, consider the merits of the State’s investigatory-stop theory because we conclude that the trial court correctly accepted the State’s argument that the officers had probable cause to search Hankerson. See PK Ventures, Inc. v. Raymond James & Assocs., Inc., *506 690 So.2d 1296, 1297 n. 2 (Fla.1997) (“Once a court obtains jurisdiction, it has the discretion to consider any issue affecting the case.”).
Law enforcement officers have probable cause to conduct a search where “ ‘the facts and circumstances within their (the officers’) knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that’ an offense has been or is being committed.” State v. Betz, 815 So.2d 627, 633 (Fla.2002) (alteration in original) (quoting Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The United States Supreme Court has expressly stated that a law enforcement officer “may draw inferences based on his own experience in deciding whether probable cause exists.” Ornelas v. United States, 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The Supreme Court has further explained that probable cause is a “fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.” Maryland v. Pringle, 540 U.S. 366, 370-71, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The “standard of probable cause” is “only the probability, and not a prima facie showing, of criminal activity.” Gates, 462 U.S. at 235, 103 S.Ct. 2317 (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).
In reviewing a trial court’s ruling on a motion to suppress, the appellate courts defer to the trial court’s factual findings so long as the findings are supported by competent, substantial evidence, and review de novo the legal question of whether there was probable cause given the totality of the factual circumstances. Twilegar v. State, 42 So.3d 177, 192 (Fla. 2010), cert. denied, — U.S. -, 131 S.Ct. 1476, 179 L.Ed.2d 315 (2011). Having reviewed the evidence presented at the hearing on Hankerson’s motion to suppress, we agree with the trial court’s conclusion that Hankerson’s actions on the afternoon of February 28, 2008, would have led a person of reasonable caution to believe that Hankerson had committed a criminal offense.
While a probable cause determination generally is so “multi-faceted” that “one determination will seldom be a useful ‘precedent’ for another,” Ornelas, 517 U.S. at 698, 116 S.Ct. 1657 (quoting Gates, 462 U.S. at 238 n. 11, 103 S.Ct. 2317), the district courts of appeal have found probable cause to exist in cases involving similar factual circumstances. For example, in Knox v. State, 689 So.2d 1224, 1225 (Fla. 5th DCA 1997), the district court determined that the arresting officers had probable cause to search Knox after observing him, while in an area suspected to be the site of illegal drug transactions, engage in a series of transactions during which he leaned into a vehicle and gave the occupant a small object in exchange for cash. In that case, one of the officers testified that based on his experience, the observed transactions were consistent with illegal drug transactions.
Similarly, in Revels v. State, 666 So.2d 213, 214-15 (Fla. 2d DCA 1995), the district court determined that the arresting officers had probable cause to search the defendant where the officers observed a man exit a home known to be the site of illegal drug transactions, approach Revels, and place a small object in Revels’ left hand while Revels held cash in his right hand. Revels was the third person observed that day to have arrived at the house to engage in such a transaction. As *507 in Knox, one of the officers testified that the “overall transaction was very similar to numerous other cocaine transactions that he had witnessed prior to this arrest.” Id. at 214.
Here, Hankerson arrived at a home that had been the subject of complaints about drug activity and engaged in a series of hand-to-hand transactions — exchanging a small item for paper currency — that Officer Lucas described as consistent with hundreds of illegal drug transactions that he had observed.
In addition, Officers Lucas and Schmidt testified about specific details of Hanker-son’s behavior and demeanor that supported the trial court’s conclusion that the officers had probable cause to believe that Hankerson had engaged in criminal activity. Officer Lucas testified that rather than making eye contact, Hankerson looked up and down the street as he interacted with three of the individuals on the porch and that Hankerson’s contact with the individuals was very brief. See Williams v. State, 717 So.2d 1109, 1109 (Fla. 5th DCA 1998) (concluding that officer had probable cause to conduct search where in a location known for frequent drug sales, the defendant looked to see if anyone was watching before extracting a small item from the buttocks area of his pants and exchanging it for an unknown item).
We disagree with the Fourth District’s conclusion that the instant case was so factually similar to Coney as to require suppression of the evidence. In Coney, two law enforcement officers, who were conducting surveillance in an area where many drug arrests previously had been made, observed Coney approach a car and put his closed hand into the car. As the car left, the officers “saw that Coney held money.” Coney, 820 So.2d at 1013. The officers could not see what had been in Coney’s hand but testified that based on their training and experience, they believed that they had observed a drug transaction. The district court concluded that the officers did not have probable cause to search Coney based on their observation of “a single suspicious event.” Id. at 1014-15. Notably, in the instant case, the law enforcement officers observed a series of quick exchanges with three separate individuals, not a single transaction. Officer Lucas saw Hankerson offer several small objects on his open palm to the individuals on the porch, whereas the officers in Coney merely saw the defendant reach into a car with a closed hand. And finally, while Officer Lucas testified that Hankerson repeatedly examined his surroundings rather than making eye contact with the individuals on the porch, Coney does not include any discussion of the defendant’s demeanor during the suspected drug transaction.
When considered in their totality, the factual circumstances of this case support the trial court’s conclusion that Officers Lucas and Schmidt had probable cause to search Hankerson. Accordingly, the trial court did not err in denying Hankerson’s motion to suppress.
III. CONCLUSION
Based on the foregoing, we quash the Fourth District’s decision and remand for proceedings consistent with this opinion.
It is so ordered.
LEWIS, QUINCE, POLSTON, and LABARGA, JJ., concur.
PARIENTE, J., dissents with an opinion, in which PERRY, J., concurs.