BERGER, J.
Department of Children and Families (“DCF”) appeals the trial court’s order denying its second petition to shelter E.R., the three-week-old child of H.M.R. (“Mother”). DCF argues that the trial court applied an incorrect standard in finding that there is no probable cause to shelter E.R. We agree and reverse.[1]
Section 39.402(l)(a), Florida Statutes (2014), permits the removal and placement of a child in shelter care if there is probable cause to believe that the child has been “abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment.” See also P.U. v. Dep’t of Children & Families, 24 So.3d 706, 707 (Fla. 4th DCA 2009). In order to continue a child in shelter care, “[DCF] must establish probable cause that reasonable grounds for removal exist and that the provision of appropriate and available services will not eliminate the need for placement.” § 39.402(8)(d)1., Fla. Stat. (2014). “The issue of probable cause shall be determined in a nonadversarial manner, applying the standard of proof necessary for an arrest warrant.” Fla. R. Juv. P. 8.305(b)(3).
The Florida Supreme Court has defined “probable cause” in the context of an arrest warrant as “a reasonable ground of suspicion supported by circumstances strong enough in themselves to warrant a cautious person in belief that the named suspect is guilty of the offense charged.” Johnson v. State, 660 So.2d 648, 654 (Fla.1995) (noting that, in some cases, unverifiable hearsay alone will establish probable cause). “[P]robable cause is a ‘fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.’ ” State v. Hankerson, 65 So.3d 502, 506 (Fla.2011) (quoting Ornelas v. United States, 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). It requires “ ‘only the probability, and not a prima facie showing, of criminal activity.’ ” Id. (quoting Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In the context of a shelter hearing, “[t]he court may base its [probable cause] determination on a sworn complaint, testimony, or an affidavit and may hear all relevant *479 and material evidence, including oral and written reports, to the extent of its probative value even though it would not be competent at an adjudicatory hearing.” Fla. R. Juv. P. 8.305(b)(5).
In the present case, the trial court was presented with evidence[2] that Mother entered an Alford[3] plea to and was convicted of involuntary manslaughter and felony child abuse in connection with the death of E.R.’s sibling, J.L., who was an infant at the time; that Mother pled guilty to and was convicted of misdemeanor child abuse in relation to another of E.R.’s siblings, L.C., who had been removed from her care due to unexplained bruising; and that Mother did not have custody of any of E.R.’s five surviving siblings.[4] Despite this, the trial court, inexplicably, determined that DCF had failed to establish probable cause, denied the petition, and ordered that E.R. be released from shelter care and returned to Mother.[5]
. Pursuant to section 39.806, Florida Statutes (2014), the evidence of Mother’s egregious conduct (or failure to prevent egregious conduct) as to E.R.’s sibling, J.L., as well as the evidence of Mother’s involuntary manslaughter conviction in relation to the death of E.R.’s sibling, J.L., would actually subject Mother to expedited termination of parental rights proceedings. See § 39.806(1)(f), (h), Fla. Stat. (2014); see also In re E.R., 49 So.3d 846, 853 (Fla. 2d DCA 2010) (addressing section 39.806(1)(h), explaining that “DCF proceeded on three statutory grounds including murder of a child under section 39.806(l)(h),” and providing that “[it] believe[d] that where DCF proves by clear and convincing evidence that a parent has murdered a child, there is no requirement for DCF to then prove a nexus between that child’s murder and a threat of prospective harm to the murdered child’s siblings,” that. “[t]he risk in this kind of case is clear, and any chance of subjecting the living children to circumstances that could result in a similar fate is unacceptable,” and that “[f]urthermore, there is no nexus requirement within the statute”); Dep’t of Children & Families v. B.B., 824 So.2d 1000, 1007 (Fla. 5th DCA 2002) (addressing section 39.806(1)(f) and providing that “[u]nder this statute, egregious abuse directed at one sibling is sufficient, standing alone, to support termination of parental rights to another child, without requiring additional proof to establish a likelihood that remaining children will be abused”).
It appears from the record before us that the trial court believed it could not consider Mother’s past conduct when determining probable cause. In relation to Mother’s involuntary manslaughter conviction, the trial court stated:
It’s not a conviction, if it’s an offered plea. I mean, it’s — I mean, I understand what you’re saying. Yes, it’s a conviction, but it’s manslaughter. That’s — there’s case law out there that says one child’s activity is not the same *480 in other children. So I can’t see probable cause on that issue, all right, but here’s the deal. It’s so close it’s scary. Okay.
It also appears that the trial court held DCF to a higher burden than that provided by the statute. At this stage, DCF is not required to produce clear and convincing evidence to terminate Mother’s parental rights, but merely is required to show the probability that E.R. is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment. This standard was met.
After a thorough review of the record, we conclude that the evidence presented by DCF at the March 20, 2014, hearing, coupled with the evidence heard by the trial court the previous day, is more than sufficient to establish probable cause to believe that E.R. is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment, and that the trial court erred as a matter of law in concluding that it is not. Accordingly, we reverse the order denying DCF’s second petition to shelter E.R. and remand for further proceedings.
REVERSED and REMANDED.
TORPY, C.J., and PALMER, J., concur.

. DCF also argues that the trial court erred in denying it an additional 72 hours to obtain and review additional documents in order to appropriately determine the risk to the child. Because we determine that DCF established probable cause to shelter E.R., we need not address this issue.

. We find it unnecessary to reiterate all of the egregious facts outlined in the first and second shelter petitions and presented through testimony and documentary evidence at both shelter hearings.

. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

. A court order from Guilford County, North Carolina, entered November 19, 2013, was presented to the trial court during the hearing on the second shelter petition. The judge in North Carolina found that the injuries to the deceased child, which included six skull fractures, were alone sufficient for Mother not to be reunified with another of E.R.’s five surviving siblings, X.R.

.On March 21, 2014, this court granted DCF’s emergency motion for stay.