OPINION
{¶ 1} The State of Ohio appeals pursuant to Crim.R. 12(K) from the trial court's decision and entry sustaining appellee Cranston L. Carlisle's pretrial motion to suppress evidence against him.
 {¶ 2} In its sole assignment of error, the State contends the trial court erred in finding that a police officer did not have reasonable and articulable suspicion to justify stopping Carlisle to investigate a possible theft.
 {¶ 3} The facts of the present case, as set forth in the trial court's decision, are based on suppression-hearing testimony and are as follows:
 {¶ 4} "Officer Jonathon Emmel (`Emmel') testified that [he] was patrolling near a Walmart store on Salem Avenue in Trotwood at approximately 1:00 p.m. in the afternoon of July 5, 2004. According to Emmel, he saw a red two [door] car coming toward him swerve off the road. He then testified that he saw an individual running from what appeared to be the rear of the Walmart store and get into the red car. Emmel stated that he knew from his experience as a police officer that the Walmart was the target of a significant amount of shoplifting and that violators usually exited from the rear of the store. Emmel had no official report of a possible theft at the store.
 {¶ 5} "The car then pulled back onto the road and, a few blocks later, Emmel stopped the car based on his suspicion of the theft. When Emmel spoke with the driver, he learned that the driver did not have a license. According to Emmel, he told the driver that he had made the stop because he suspected that the passenger had been involved in a theft at Walmart. Another police officer took the driver to a cruiser and Emmel spoke with Defendant who was the passenger. According to Emmel, Defendant told him that he did not steal anything and that he just saw his buddy and jumped in the car. When asked if he had any drugs or weapons, Defendant told Emmel that he had a pocket knife. Defendant was then handcuffed and patted down.
 {¶ 6} "According to Emmel, Defendant consented to the search [of] a Walmart bag that he had in his possession. Emmel found no stolen merchandise. However, Emmel testified that inside the bag was another bag which he searched and found a crack pipe. Defendant was then arrested for possession of drug paraphernalia. Defendant was transported to the jail.
 {¶ 7} "At the jail, Emmel observed the pat-down and search of Defendant. Emmel testified that as Defendant was removing his shoes and socks, he noticed a small plastic bag that stuck to Defendant's leg then fell to the floor. According to Emmel, Defendant placed his foot over it. When it was retrieved, it appeared to contain crack cocaine." (Doc. #15 at 1-2).
 {¶ 8} After making the foregoing factual findings based on the testimony of Emmel, the trial court found that the officer lacked a reasonable and articulable suspicion of criminal activity to justify a stop under Terry v. Ohio (1968),392 U.S. 1. In support of its ruling, the trial court reasoned:
 {¶ 9} "In the case at bar, the Court finds that Emmel testified that based on his experience as a police officer and his knowledge of the high occurrences of shoplifting at the Walmart in question, he formed an opinion that Defendant's actions were consistent with someone who had just committed a theft at the store. Although the Court finds Emmel to be credible and believes that he acted in good faith, the totality of the circumstances in this case do not create a reasonable articulable suspicion of criminal activity to sufficient [sic] to justify the stop, detention and search of Defendant. The fact that Defendant was running to a car in a high-theft area does not constitute criminal activity or create a reasonable suspicion of such to permit an intrusion of his Fourth Amendment rights. Thus, the stop of Defendant was constitutionally invalid.
 {¶ 10} "Although Defendant consented to the search of the bag in which the crack pipe was found, `[a] valid consent to search cannot be given following an illegal detention to which it is strongly connected, and evidence uncovered as the result of such a search must be suppressed as fruit of the poisonous tree.'State v. Pinder (Dec. 15, 1993), 2nd Dist. 93-CA-6. Likewise, evidence seized during the search of Defendant at the jail must also be suppressed as fruit of the poisonous tree." (Doc. #15 at 3-4).
 {¶ 11} The only issue raised by the State on appeal is whether Emmel had reasonable and articulable suspicion to stop Carlisle to investigate a possible theft. In light of Emmel's prior experience with thefts at the Walmart and Carlisle's act of running to a car behind the store with a bag under his arm, the State asserts that the officer acted lawfully in making a Terry
stop to investigate the situation.
 {¶ 12} Upon review, we find the State's argument to be unpersuasive. When confronted with a motion to suppress, a trial court assumes the role of the trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. State v. Retherford (1994),93 Ohio App.3d 586, 592. Accordingly, in reviewing a ruling on a motion to suppress, we give broad deference to the trial court's findings of fact if they are supported by competent, credible evidence. Id. Although we defer to the trial court's findings of fact, we must conduct a de novo review to apply those facts to the requirements of the Fourth Amendment. Ornelas v. UnitedStates (1996), 517 U.S. 690. In other words, we determine for ourselves, based on the trial court's properly supported findings of fact, whether Emmel's stop of Carlisle violated the Fourth Amendment.
 {¶ 13} Having reviewed a transcript of the suppression hearing, we find evidentiary support for all of the trial court's factual findings except one: Emmel did not testify that Carlisle was carrying "a Walmart bag." Rather, the officer testified that he did not remember whether the bag had a name on it. Although we accept the trial court's other factual findings, a few additional facts warrant being mentioned. First, Emmel clarified that Carlisle's act of "running" was actually more of a "jog." He also admitted that he did not see Carlisle exit the Walmart and did not know where he had come from. Carlisle was approximately thirty yards away from the Walmart when Emmel noticed him, and the officer did not know whether Carlisle had come around the store from the front. We note too that Emmel described the road behind the Walmart where the red car stopped as a "wider street" with two-way traffic in a mixed residential and commercial area. In addition, although Emmel testified that the red car suddenly "swerved off to the right side of the road" to pick up Carlisle, the officer did not make the stop for purposes of issuing any traffic citation. Instead, he testified that the sole basis for the stop was his suspicion of a theft offense. Moreover, Emmel testified that the red car proceeded lawfully after picking up Carlisle.
 {¶ 14} Based on our own review of the evidence, we agree with the trial court that Emmel lacked reasonable and articulable suspicion of criminal activity to justify stopping Carlisle. All Emmel saw was a car stopping to pick up a person jogging away from a store and toward a road with a bag under his arm in a mixed residential and commercial area. Even taking into consideration the officer's experience with prior incidents of theft at the Walmart, we believe his level of suspicion was more akin to a hunch than it was to the suspicion needed to justify aTerry stop. If Emmel had seen Carlisle exit the rear of the Walmart or had seen Walmart employees following him, we certainly might reach a different conclusion. Under the facts before us, however, we hold that the trial court properly sustained Carlisle's suppression motion.
 {¶ 15} Based on the reasoning set forth above, we overrule the State's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Grady, P.J., and Fain, J., concur.