NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2035
_____

UNITED STATES OF AMERICA

v.

AMON THOMAS,
Appellant
_____

On Appeal from the District Court
of the Virgin Islands – Appellate Division
Division of St. Croix
(D.C. No. 1-08-cr-00020-001)
District Judge:  Honorable Raymond L. Finch
_____

Argued December 5, 2011
Before:  FISHER, GREENAWAY, JR. and ROTH, *Circuit Judges*.

(Filed:  January 5, 2012)

Alvin E. Entin (Argued)
Entin & Della Fera
110 Southeast 6th Street, Suite 1970
Fort Lauderdale, FL  33301
	*Counsel for Appellant*

Alphonso G. Andrews, Jr. (Argued)
Office of United States Attorney
1108 King Street, Suite 201
Christiansted, VI  00820

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Amon Thomas ("Thomas") was convicted for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a), manufacture of marijuana, also in violation of 21 U.S.C. § 841(a), and maintaining a drug-involved premises, in violation of 19 V.I.C. § 608b. Thomas appeals his conviction on the basis that the District Court erred in denying his motion to suppress. For the reasons set forth below, we will affirm the judgment of the District Court.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On May 12, 2008, at approximately 8:10 a.m., Officer Samuel Abraham of the Virgin Islands Police Department ("VIPD") heard a report over the police radio that multiple gunshots had been fired in the vicinity of Thomas Malloy Tire Shop in the Catherine's Rest area of St. Croix. VIPD Officer Heyliger was in the area at the time and observed a silver-colored vehicle pass him at a high rate of speed. Shortly thereafter, VIPD Sergeant Cecil Gumbs informed VIPD Central Control that he witnessed the same vehicle turn down a dead-end street adjacent to an octagonal-shaped house in Catherine's Rest. The octagonal house was located approximately 1,000 feet from Malloy Tire Shop. Gumbs, Abraham, and Heyliger then met at the octagon-shaped house and began to proceed down the street on which Gumbs had seen the silver car turn. At approximately

2

8:17 a.m., the officers witnessed a red Mitsubishi Mirage exit a property located at 6-6 Catherine's Rest and turn toward them. The red car was traveling very slowly, and as it passed Abraham's vehicle, Abraham noticed that someone was lying down in the back seat. Gumbs also testified that the driver was watching the officers. Police stopped the red Mitsubishi and ordered the occupants to exit the vehicle. The driver, Okimo Milligan, complied, but the individual in the backseat, later identified as Thomas, waived his hands indicating that he could not exit the vehicle. Officers soon discovered that he had a gunshot wound to his abdomen.

After detaining Thomas and Milligan, officers proceeded to 6-6 Catherine's Rest, which was the only property on the street on which residential structures were located. When they arrived, the officers observed numerous marijuana plants growing on the property. They also discovered the silver car parked near the back of the residence. After obtaining a search warrant, police seized 311 marijuana plants and various other items.

On July 15, 2008, a grand jury returned a multiple-count indictment against Thomas and several co-defendants. On January 26, 2009, the District Court held a hearing on Thomas's motion to suppress the evidence seized during the search of the 6-6 Catherine's Rest property. The District Court denied Thomas's motion on February 19, 2009, reasoning that officers had reasonable suspicion to stop the red Mitsubishi and thus any evidence seized thereafter was admissible. A jury subsequently convicted Thomas of: (1) knowingly and intentionally possessing with intent to distribute, or aiding and

3

abetting the possession with intent to distribute, 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii); (2) knowingly and intentionally manufacturing, or aiding and abetting the manufacturing of, 100 or more marijuana plants, also in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii); and (3) maintaining a drug-involved premises, in violation of 19 V.I.C. § 608b. Thomas filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 48 U.S.C. § 1612 and 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. When considering the denial of a motion to suppress, "we review the [District] Court's underlying factual findings for clear error, and we exercise plenary review over its application of the law to those facts." *United States v. Mathurin*, 561 F.3d 170, 173 (3d Cir. 2009) (citations omitted).

## III.

Thomas argues that officers did not have reasonable suspicion to stop the red Mitsubishi and thus all evidence seized thereafter should be suppressed as fruit of the poisonous tree. We disagree. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a seizure of the vehicle's occupants for purposes of the Fourth Amendment. *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010). Although a seizure generally must be effectuated with a warrant supported by probable cause, under *Terry v. Ohio*, 392 U.S. 1 (1968), "an officer may . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion

4

that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). We have made clear, however, that "an officer cannot conduct a *Terry* stop simply because criminal activity is afoot." *United States v. Goodrich*, 450 F.3d 552, 560 (3d Cir. 2006) (citations omitted). Rather, the officer must have "a particularized and objective basis for believing that *the particular person* is suspected of criminal activity." *Id.* (citation omitted).

When evaluating whether there was an objective basis for reasonable suspicion, "we consider the totality of the circumstances – the whole picture." *United States v. Brown*, 448 F.3d 239, 247 (3d Cir. 2006) (internal marks and citations omitted). "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Mathurin*, 561 F.3d at 174 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Factors that we consider include "the geographical and temporal proximity of the stop to the scene of the alleged crime" and the lack of other persons or vehicles in the area. *Goodrich*, 450 F.3d at 561, 563. Under the reasonable suspicion standard, we accord substantial deference to the officer's judgment based on his "knowledge of the nature and the nuances of the type of criminal activity that he had observed in his experience." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citation omitted).

In this case, officers possessed reasonable suspicion that the occupants of the red Mitsubishi were connected to the shooting that had been reported minutes earlier. Soon after the shots were heard, a silver-colored vehicle traveling at a high rate of speed was seen turning onto a dead-end street adjacent to the octagonal-shaped house. Shortly thereafter, the red Mitsubishi was seen by the officers departing 6-6 Catherine's Rest, which was the only property on the street on which buildings were located. Accordingly, it was entirely reasonable for officers to suspect that any vehicle leaving the property was connected to the shooting. The officers' basis for suspicion was strengthened by the fact that the red Mitsubishi was traveling at an usually slow speed and an individual was observed lying down in the backseat. Under the circumstances, it was reasonable for officers to suspect that the individual in the backseat was attempting to avoid police detection.

Assuming, *arguendo*, that the stop was unjustified, the evidence seized from 6-6 Catherine's Rest was nevertheless admissible against Thomas under the inevitable discovery doctrine. "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." *Nix v. Williams*, 467 U.S. 431, 444 (1984). Here, even if police had not stopped the red Mitsubishi and learned that Thomas had been shot, they still would have investigated 6-6 Catherine's Rest because it was the only residential property on a dead-end street and thus, was the likely location of the silver car. Upon arriving at the

6

property, police would have inevitably discovered the marijuana plants growing on the premises, which were in plain view. At oral argument, Thomas's counsel argued that Thomas would never have been tied to the marijuana had it not been for the traffic stop. We disagree. Thomas resided in the house at 6-6 Catherine's Rest and thus would have inevitably become part of any police investigation related to marijuana on the premises. Accordingly, even if officers lacked reasonable suspicion to stop the red Mitsubishi, the evidence seized from 6-6 Catherine's Rest was nevertheless admissible against Thomas.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.