POSNER, Circuit Judge,
concurring.
I agree with the decision but have reservations about some of the verbal formulas in the majority opinion. I do not criticize the majority for reciting them, because they are common, orthodox, even canonical. But they are also inessential and in some respects erroneous, and on both grounds ripe for reexamination.
First is the proposition that when a judge issues a warrant, whether to search or to arrest, the appellate court “must afford ‘great deference’ to the issuing judge’s conclusion” that there was probable cause. United States v. McIntire, 516 F.3d 576, 578 (7th Cir.2008). This proposition derives from Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), where we are told that the Supreme Court has “repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate’s ‘determination of probable cause should be paid great deference by reviewing courts.’ ” Why great deference? Because, we’re told in Ornelas v. United States, 517 U.S. 690, 698-99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), “the Fourth Amendment demonstrates a ‘strong preference for searches conducted pursuant to a warrant,’ Illinois v. Gates, supra, 462 U.S. at 236, 103 S.Ct. 2317, and the police are more likely to use the warrant process if the scrutiny applied to a magistrate’s probable-cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive.”
This is a curious passage in three respects. First, why should a reviewing court accord “great” deference to a magistrate’s determination of probable cause? The term “magistrate,” often used in place of “judge” to designate the judicial officer who issues warrants, is an acknowledgment that warrants usually are issued by the most junior judicial officers — and often police or prosecutors can shop among magistrates for one who is certain or almost certain to respond affirmatively to a request to issue a warrant. Second, the Fourth Amendment does not express a preference for searches conducted pursuant to warrants. Warrants are mentioned only in the amendment’s second clause, which forbids general warrants and warrants not supported by both probable cause and an oath or affirmation. Nothing in the amendment requires warrants— ever.
And third, the proposition, .whether or not correct, that police are more likely to resort to warrants if more deference is given to a magistrate’s finding of probable cause than to an after-the-fact assertion by police or prosecutors that a search without a warrant is supported by probable cause implies confidence by the police that the magistrates from whom they seek warrants can be depended upon to find probable cause to issue the warrants. Otherwise warrants would be abjured. In short, the more warrants, the more searches because searches pursuant to warrants are *406 less likely to be challenged than warrant-less searches.
The passages from judicial opinions that I’ve quoted thus far invite judicial haste and carelessness. But wait a minute — I am objecting to propositions enunciated by the Supreme Court. That may seem impertinence on my part, forcing me to invoke the old proverb that “a cat may look at a king,” one meaning of which is that an inferior is or should be allowed to criticize a superior.
Another reservation I have concerning the majority opinion in this case relates to the defendant’s request that the district judge conduct a hearing (called a Franks hearing, see Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)) to determine the likelihood that an agent had lied in the affidavit submitted to the magistrate in support of the agent’s request for a warrant. The district court refused to hold a hearing, and in affirming the refusal our majority opinion says that “ ‘determining the likelihood that [an investigator] lied in his warrant affidavit ... involve[s] essentially the same process as fact-finding,’ so our review of this issue, too, is deferential, for clear error only,” quoting United States v. Pace, 898 F.2d 1218, 1227 (7th Cir.1990). Doubtless the majority would also agree with the statement in Pace that “where the district court has reasonably and conscientiously reviewed the defendant’s [claim for a hearing], and has properly applied the law, its decision should stand even if we, as an original matter, would have ordered the hearing.” Id. This is a conventional appellate-court statement, but it’s puzzling. What could it mean to say that the district court’s decision “should stand even if we, as an original matter, would have ordered the hearing”? It could just mean that we haven’t been given all the facts, and the district court was given all the facts, so its decision is more likely to be correct than ours would be. Or it could mean that the case is a toss-up and — rightly—a tie goes to the district court. Which is it? I’d like to know.
I am puzzled too by the remark in Pace that “even if de novo review is more likely to catch and correct more ‘mistakes’ by the district courts in denying Franks hearings, those mistakes do not go to a defendant’s actual guilt or innocence.... [W]here mistakes do not go to guilt or innocence, de novo review imposes too great a cost for the benefits it might obtain.” Id. There is first the question, which I’ll leave for another day, what the terms “actual guilt” and “actual innocence” mean that “guilt” and “innocence” without the adjective “actual” do not mean. The next question is, when there are mistakes that do not relate to the defendant’s guilt or innocence, what reason could there be for paying any attention to them? A partial answer is that while a warrant procured by a lie is unlawful (it may violate a statute, or a judicial gloss that has been placed on the Fourth Amendment), it need not signal that the defendant is innocent of the crime with which he’s charged — the crime that led to the application for a warrant. Yet one would have expected a dishonest application, being a serious procedural violation, to invite as close (or almost as close) judicial scrutiny as an erroneous conviction. Otherwise there are bound to be false convictions. Police who procure a search warrant by lying to the magistrate may also have no scruples against planting contraband in the house they are searching, or against pretending that the person they arrested had resisted arrest violently. It makes sense to exclude the fruits of such . warrants even if in many cases the error doesn’t imply that the defendant is innocent.
*407 Three-fourths of the way through the majority opinion we read that “any challenge to the sufficiency of the evidence [that the defendant acted with ‘deceptive intent’] comes with ‘a heavy, indeed, nearly insurmountable burden,’” quoting United States v. Warren, 593 F.3d 540, 546 (7th Cir.2010). To prevail, the defendant “must convince us that even after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found him guilty beyond a reasonable doubt.” Id. I have trouble understanding why an appellant should have to overcome “a heavy,” a “nearly insurmountable,” burden of proof. Criticizing such hyperbole we said in United States v. Curescu, 674 F.3d 735, 741 (7th Cir.2012), that “to say that a jury verdict can be set aside only if “wholly irrational’ (which would indeed be a ‘nearly insurmountable’ proposition to establish) is the kind of hyperbole that sometimes creeps into opinions.... A jury verdict of guilt can be set aside — must be set aside — if, even though the verdict is not “wholly irrational,’ the evidence would not have justified a reasonable juror in finding guilt beyond a reasonable doubt.”
And why is evidence in a criminal trial to be viewed “in the light most favorable to the prosecution”? It’s been said that when an appellant “challenges the sufficiency of the evidence to convict him ... by expressing his disagreement with the state trial judge’s [or the jury’s] decision to believe one of the eyewitnesses against him,” we cannot reverse the conviction unless given some “basis to suppose that the trial judge was irrational to credit this witness’s testimony.” Johnson v. Gramley, 929 F.2d 350, 351 (7th Cir.1991). Yet often the study of a trial transcript reveals not that the judge was irrational but that there was no basis for believing or disbelieving the witness — the judge was guessing, and while the guess was rational it can’t realistically be thought to have determined guilt or innocence.
And why must a. conviction be affirmed even if it is apparent that the trier of fact (judge or jury), while not irrational, was mistaken? Why in short are the dice so heavily loaded against defendants? And finally can the extraordinary burden placed on defendants be squared with the requirement (unchallenged) that a defendant must be proved guilty beyond a reasonable doubt in order to be convicted?
I also question the statement near the end of the majority opinion that “claims of [jury-]instructional error” are to be “reviewed] ... for abuse of discretion,” the term “abuse of discretion” being defined a few lines further along as including, among other missteps, “material errors of law.” Of course material errors of law are potentially very serious, but what has that to do with discretion or its abuse? Common as the term “abuse of discretion” is in opinions dealing with appeals from district court decisions, I find it opaque. If the appellate court is persuaded that the trial ■ court erred in a way that makes the trial court’s decision unacceptable, it reverses. What has discretion to do with it? And “abuse” seems altogether too strong a term to describe what may be no more than a disagreement between equally competent judges — the trial judge and the appellate judges — that the appellate judges happen to be empowered to resolve as they see fit.
To repeat what I said at the outset, I don’t disagree with the decision to affirm the district court. I disagree merely with the rhetorical envelope in which so many judicial decisions are delivered to the reader. Judicial opinions are littered with stale, opaque, confusing jargon. There is no need for jargon, stale or fresh. Every *408 thing judges do can be explained in straightforward language — and should be.